57 CCPA

**Adrian P. BROKAW, Appellant,**

**v.**

**Charles B. VOGEL, Appellee.**

**Patent Appeal No. 8275.**

United States Court of Customs and Patent Appeals.

Aug. 6, 1970.

January 30, 1962, on application serial No. 806,586, filed April 15, 1959, and Vogel application serial No. 253,682, filed January 24, 1963, entitled "Well Logging." [2] The appeal is directed only to count 1, which was awarded to Vogel, no appeal having been taken as to a second count which was awarded to Brokaw. We reverse.

The subject matter is an electronic computer system for use in an acoustical type system for logging bore holes in drilling for oil. The nature of the system appears from the count, which reads:

> 1. A computer in an acoustic well logging system for discriminating between valid signal information represented as time intervals between a pair of accepted pulses and invalid signal information represented as time intervals between a pair of rejected pulses, comprising means to accept a pair of pulses as valid signal pulses when the pulses occur within a predetermined time range following a synchronizing pulse, means generating a function pulse in response to said pair of pulses, means for storing the valid signal information in response to the function pulse, and utilization means for measuring the stored valid signal information.

Brokaw took no testimony and relied on his filing date. The board found that Vogel had proved by his evidence an actual reduction to practice of a logging system using the subject matter of the count by November 27, 1957, well prior to Brokaw's filing date of April 15, 1959. Brokaw does not challenge that finding.

The sole issue arises from the board's ruling against Brokaw's charge that Vogel forfeited his right to a patent on count 1, as against Brokaw, because of delay in filing his application after actual reduction to practice and the attendant circumstances under the doctrine enunciated in Mason v. Hepburn, 13 App.D.C.

Frank S. Troidl, Houston, Tex., attorney of record, for appellant; Douglas M. Clarkson, Robert W. Mayer, William E. Johnson, Jr., Dallas, Tex., of counsel.

Theodore E. Bieber for appellee.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and FORD, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Board of Patent Interferences [1] in interference No. 94,142 involving Brokaw patent No. 3,019,413, for "Discriminating Interval Time Computer for Acoustic Well Logging Systems," issued

1. Consisting of Boys, Williams, and Capelli, Examiners of Interferences, opinion by Boys.

2. The real parties in interest are Lane-Wells Division of Dresser Industries, Inc., assignee of Brokaw, and Shell Development Company, assignee of Vogel.

86 (D.C.Cir., 1898), and applied by this court in Woofter v. Carlson, 367 F.2d 436, 54 CCPA 917 (1966), and Engelhardt v. Judd, 369 F.2d 408, 54 CCPA 865 (1966). The Mason v. Hepburn doctrine now finds statutory basis in 35 U.S.C. § 102(g), which specifies, as one ground for denying a patent, that

> (g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it.

Here Vogel is a de facto first inventor, having concededly made an actual reduction to practice before the filing date on which Brokaw relies. He is "another" who made the invention in this country before Brokaw did on which basis he can defeat Brokaw's right to a patent *but only if,* under section 102(g), he did not abandon, suppress, or conceal his invention. On the facts of this case, we are not concerned with abandonment. The true issue is whether Vogel suppressed or concealed his prior invention so as to have forfeited his right to a patent as against the later inventor Brokaw. Under Mason v. Hepburn, the question is whether Brokaw is to be considered the "first" inventor in law, though, de facto, he is a second inventor.

Specifically, Brokaw contends that:

> * * * (1) the evidence so clearly establishes that Vogel abandoned, suppressed or concealed his invention within the meaning of 35 U.S.C. § 102 (g) that any additional proof that Vogel was "spurred" into action by the issuance of the Brokaw patent is superfluous and (2) if such additional positive proof of "spurring" is required by the law, the record clearly shows more than ample evidence from which it can be inferred that Vogel was "spurred" into action by actual knowledge of the Brokaw patent.

In support of his position, Brokaw points out that Vogel did not file his application[3] until more than five years (1957 to 1963) after his actual reduction to

practice and only six days before the expiration of the one-year period set by 35 U.S.C. § 135 for an applicant to make a claim to the same subject matter as a claim of an issued patent. He also emphasizes that the testimony shows that the equipment through which Vogel's actual reduction to practice was effected was dismantled.

■ Review of the aforementioned decisions, which Brokaw in oral argument characterized as on "all fours" with the present case, reveals significantly parallel bases for a holding of concealment or suppression here. Thus, in Mason v. Hepburn, Mason waited seven years to file his application after a unit embodying his invention, a clip to secure the magazine and barrel of a gun together, had been attached to a gun ready for sale and that gun had been stored with the clip attached to it. He had also, in the meantime, procured a patent for a gun and for a different clip to secure the magazine and barrel together. In concluding that Mason had forfeited his rights to a patent for the invention as against Hepburn, the court commented:

> Apparently the invention as a thing of value had passed out of his mind, to which it was recalled by seeing the publication of the patent to Hepburn in the OFFICIAL GAZETTE.

In Woofter v. Carlson, Carlson filed an application on his invention, an electrical connector, some eight years after his reduction to practice. The evidence showed that AMP, Carlson's assignee, was spurred into filing by knowledge that GM, Woofter's assignee, was placing the connector in commercial use. The court there found that Woofter met the burden of proving his case because he had "established in the present record facts which establish a concealment or suppression of the AMP invention within the so-called 'forfeiture rule' of Mason v. Hepburn * * *."

In Engelhardt v. Judd, Englehardt, who was likewise held to have forfeited

---

3. The Vogel application as filed included count 1 copied from Brokaw's patent and was accompanied by a letter requesting that the interference be declared.

his right to a patent despite an actual reduction to practice two years prior to Judd's earliest date, conceded that he had "no plans" for further activities in connection with the subject matter, a chemical compound, at the time when he became aware of Judd's patent. In other words, the evidence justified the conclusion that knowledge of the Judd patent was the direct cause of Engelhardt's filing his application.

On the other hand is Gallagher v. Smith, 206 F.2d 939, 41 CCPA 734 (1953), relied on by Vogel and the board, but it can be distinguished on its facts from the facts here. In that case, Smith delayed over six years after his actual reduction to practice before filing his application, which filing was also two years after Gallagher had reduced to practice. The forfeiture doctrine of Mason v. Hepburn was held not to be applicable because Gallagher had failed to show concealment or suppression, as distinguished from mere delay, by positive proof. Moreover, a substantial factual difference lies in Smith having been the *first to file* while here Vogel is the junior party.

The main facts weighing against Vogel are that he delayed more than five years in filing and that he obviously had knowledge of the Brokaw patent when he did file. Brokaw further points to the circumstances of the dismantling of the Vogel system which was reduced to practice as indicating an intention to take no further action on Vogel's invention. The evidence on the latter point is only that the equipment had been dismantled at some time *before the testimony was taken* in March of 1966, three years after Vogel filed.[4] It is not seen that a dismantling, which *may* have taken place *after* Vogel's application was filed, proves by itself that Vogel intended to suppress or conceal his invention, particularly when it is recognized that the system embodied electronic components which might well have had more practical uses than lying dormant in experimental apparatus whose efficacy had already been fully established. However, it is not necessary to show that Vogel had a specific intent to suppress or conceal. Considering all the evidence, the board summarized its reaction thereto as follows:

> We are not convinced that disassembly of the Vogel device without more definite evidence as to the attitude at Shell towards the invention is sufficient to amount to abandonment or concealment under the Mason v. Hepburn doctrine. Further, although delay in filing the Vogel application for nearly a year after issuance of the Brokaw patent generates a strong suspicion that such filing was spurred by knowledge of that patent, we are not convinced that in the absence of more positive evidence a holding of spurring is justified. In providing for copying patent claims within one year from the issue date of the patent Congress imposed no limitation with respect to the filing of an application in which such claims could be copied. We think that it would be improper to in effect impose such a limitation by an award of priority as here urged by Brokaw in the absence of more positive proof than has here been presented.

The board felt that this case was more like the *Gallagher* case than the cases relied on by Brokaw, *Woofter* and *Engelhardt,* and said that it failed to find here the positive evidence which *Gallagher* calls for and which was present in *Woofter* and *Engelhardt*. In the *Gallagher* case it would appear that Smith was almost continuously active in pursuing the commercialization of his invention in various ways, in addition to being the first to file. An unusual feature of that case was that Gallagher's assignee was a licensee under two earlier Smith patents and also under the very

4. This evidence was elicited by Brokaw in the cross-examination of Vogel's witnesses and Brokaw might well have pursued the point to determine the approximate date of the dismantling.

patent involved in the interference from which the counts came. Smith was not one to leave his reduced-to-practice inventions locked in the cupboard.

There has been discussion in the briefs here as to whether it was incumbent on Brokaw to prove that Vogel was incited or "spurred" to activity by knowledge of Brokaw's patent but even in Gallagher this court made it clear that such evidence is not a prerequisite to application of the Mason v. Hepburn doctrine. (See the penultimate paragraph of the opinion.)

While it may have been trite to say so, we pointed out in *Engelhardt* that "the cases are in all full accord that each case of alleged suppression and concealment must be considered and decided on its own facts." We then applied the forfeiture doctrine of Mason v. Hepburn to a fact situation in which the delay in filing after an actual reduction to practice had been only two and a quarter years where the inventor testified that only one compound had been made and tested and that he had "no plans" to go forward with the work and where he did not in fact file until after seeing his rival's patent on the same compound. Here the delay between Vogel's reduction to practice and filing date is very much longer—more than five years—and there is nothing to show that any step was ever taken by Vogel during that time to make the invention available to the public and nothing tending to excuse Vogel's inaction. It is also reasonable to infer from the record here that it was knowledge of Brokaw's issued patent that led Vogel to file his application when he finally did.

What is involved here is a policy question as to which of two rival inventors has the greater right to a patent. We fully discussed this policy question in our recent opinion in *Woofter*. For reasons there stated, we feel that the public interest here requires that Brokaw be adjudged the prior inventor in law as against the de facto first inventor Vogel on the ground that Vogel "suppressed and concealed" his invention within the meaning of section 102(g). In other words, on the facts here, Brokaw has the better right to a patent because he is the one who was the first to start the invention on its way to being disclosed to the public and because, so far as the record here shows, the public would never have gained knowledge of it through the efforts of Vogel.

Vogel's brief urges that the question of suppression and concealment is a question of fact and we should not reverse the board on this point in the absence of a convincing showing that the board was wrong. We disagree that it is a question of fact. We consider that whether there was suppression of concealment under the statute is an ultimate conclusion of law, based on other facts of record, just as "priority" is an ultimate conclusion of law.

Another point made by Vogel is that he was of the opinion that an earlier-filed application on which he tried to rely contained a disclosure of the invention of the count. The primary examiner agreed with him on this but was reversed by the board. So Vogel can take nothing from this except, possibly, support for a contention as to his state of mind during the period of inaction.

We also disagree with Vogel's contention that the Mason v. Hepburn principle, "is only to be invoked in extreme cases." It is a very healthy rule to be invoked in the public interest whenever the fact situation warrants it. While the law may abhor a forfeiture, the Mason v. Hepburn principle is not a forfeiture in the true sense; rather, it is a rule according to which the patent right goes to the most deserving. Realistically, it is a forfeiture by the de facto first inventor of the right to rely on his earlier reduction to practice.

The decision of the board is reversed.

Reversed.