**Frank E. PAULIK and Robert G. Schultz, Appellants,**

v.

**Nabil RIZKALLA and Charles N. Winnick, Appellees.**

**Appeal No. 84–787.**

**Interference No. 99764.**

United States Court of Appeals, Federal Circuit.

April 22, 1985.

Rich, Circuit Judge, filed concurring opinion.

Markey, Chief Judge, filed opinion giving additional views.

Friedman, Circuit Judge, dissented and filed opinion in which Davis, Kashiwa, Bennett and Jack R. Miller, Circuit Judges, joined.

James H. Laughlin, Jr., Benoit, Smith & Laughlin, Arlington, Va., argued, for appellants; Wendell W. Brooks, Monsanto Co., St. Louis, Mo., of counsel.

William C. Long, The Halcon SD Group, Inc., New York City, argued, for appellees. With him on brief was Riggs T. Stewart, of counsel.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, DAVIS, BALDWIN, KASHIWA, BENNETT, MILLER, SMITH, NIES, NEWMAN and BISSELL, Circuit Judges.*

PAULINE NEWMAN, Circuit Judge.

This appeal is from the decision of the United States Patent and Trademark Office Board of Patent Interferences (Board), awarding priority of invention to the senior party Nabil Rizkalla and Charles N. Winnick (Rizkalla), on the ground that the junior party and de facto first inventors Frank E. Paulik and Robert G. Schultz (Paulik) had suppressed or concealed the invention within the meaning of 35 U.S.C. § 102(g). We vacate this decision and remand to the Board.

## I.

Rizkalla's patent application has the effective filing date of March 10, 1975, its parent application. Paulik's patent application was filed on June 30, 1975. The interference count is for a catalytic process for producing alkylidene diesters such as ethylidene diacetate, which is useful to prepare vinyl acetate and acetic acid. Paulik

presented deposition testimony and exhibits in support of his claim to priority; Rizkalla chose to rely solely on his filing date.

The Board held and Rizkalla does not dispute that Paulik reduced the invention of the count to practice in November 1970 and again in April 1971. On about November 20, 1970 Paulik submitted a "Preliminary Disclosure of Invention" to the Patent Department of his assignee, the Monsanto Company. The disclosure was assigned a priority designation of "B", which Paulik states meant that the case would "be taken up in the ordinary course for review and filing."

Despite occasional prodding from the inventors, and periodic review by the patent staff and by company management, this disclosure had a lower priority than other patent work. Evidence of the demands of other projects on related technology was offered to justify the patent staff's delay in acting on this invention, along with evidence that the inventors and assignee continued to be interested in the technology and that the invention disclosure was retained in active status.

In January or February of 1975 the assignee's patent solicitor started to work toward the filing of the patent application; drafts of the application were prepared, and additional laboratory experiments were requested by the patent solicitor and were duly carried out by an inventor. The evidentiary sufficiency of these activities was challenged by Rizkalla, but the Board made no findings thereon, on the basis that these activities were not pertinent to the determination of priority. The Board held that "even if Paulik demonstrated continuous activity from prior to the Rizkalla effective filing date to his filing date ... such would have no bearing on the question of priority in this case", and cited 35 U.S.C. § 102(g)[1]

---

* This case was argued before a panel consisting of Friedman, Bennett, and Newman, *Circuit Judges.* The need for clarity in the law has prompted this court to consider this case *in banc.*

**1.** 35 U.S.C. § 102(g) provides: A person shall be entitled to a patent unless ... (g) before the

applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one

as authority for the statement that "[w]hile diligence during the above noted period may be relied upon by one alleging prior conception and subsequent reduction to practice, it is of no significance in the case of the party who is not the last to reduce to practice". The Board thus denied Paulik the opportunity to antedate Rizkalla, for the reason that Paulik was not only the first to conceive but he was also the first to reduce to practice.

The Board then held that Paulik's four-year delay from reduction to practice to his filing date was prima facie suppression or concealment under the first clause of section 102(g), that since Paulik had reduced the invention to practice in 1971 and 1972 he was barred by the second clause of section 102(g) from proving reasonable diligence leading to his 1975 filing, and that in any event the intervening activities were insufficient to excuse the delay. The Board refused to consider Paulik's evidence of renewed patent-related activity.

## II.

The Board's decision converted the case law's estoppel against reliance on Paulik's early work for priority purposes, into a forfeiture encompassing Paulik's later work, even if the later work commenced before the earliest activity of Rizkalla. According to this decision, once the inference of suppression or concealment is established, this inference cannot be overcome by the junior party to an interference. There is no statutory or judicial precedent that requires this result, and there is sound reason to reject it.

■ United States patent law embraces the principle that the patent right is granted to the first inventor rather than the first to file a patent application.[2] The law does not inquire as to the fits and starts by which an invention is made. The

who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

**2.** As observed by the Industrial Research Institute, a first-to-invent system "respects the value

historic jurisprudence from which 35 U.S.C. § 102(g) flowed reminds us that "the mere lapse of time" will not prevent the inventor from receiving a patent. *Mason v. Hepburn*, 13 App.D.C. 86, 91, 1898 C.D. 510, 513 (1898). The sole exception to this principle resides in section 102(g) and the exigencies of the priority contest.

■ There is no impediment in the law to holding that a long period of inactivity need not be a fatal forfeiture, if the first inventor resumes work on the invention before the second inventor enters the field. We deem this result to be a fairer implementation of national patent policy, while in full accord with the letter and spirit of section 102(g).

The Board misapplied the rule that the first inventor does not have to show activity following reduction to practice to mean that the first inventor will not be allowed to show such activity. Such a showing may serve either of two purposes: to rebut an inference of abandonment, suppression, or concealment; or as evidence of renewed activity with respect to the invention. Otherwise, if an inventor were to set an invention aside for "too long" and later resume work and diligently develop and seek to patent it, according to the Board he would always be worse off than if he never did the early work, even as against a much later entrant.

Such a restrictive rule would merely add to the burden of those charged with the nation's technological growth. Invention is not a neat process. The value of early work may not be recognized or, for many reasons, it may not become practically useful, until months or years later. Following the Board's decision, any "too long" delay would constitute a forfeiture fatal in a priority contest, even if terminated by extensive and productive work done long before the newcomer entered the field.

of the individual in American tradition and avoids inequities which can result from a 'race to the Patent Office' ". Final Report of the Advisory Committee on Industrial Innovation, U.S. Dept. of Commerce, Sept. 1979, p. 174.

We do not suggest that the first inventor should be entitled to rely for priority purposes on his early reduction to practice if the intervening inactivity lasts "too long," as that principle has evolved in a century of judicial analysis. Precedent did not deal with the facts at bar. There is no authority that would estop Paulik from relying on his resumed activities in order to pre-date Rizkalla's earliest date. We hold that such resumed activity must be considered as evidence of priority of invention. Should Paulik demonstrate that he had renewed activity on the invention and that he proceeded diligently to filing his patent application, starting before the earliest date to which Rizkalla is entitled—all in accordance with established principles of interference practice—we hold that Paulik is not prejudiced by the fact that he had reduced the invention to practice some years earlier.

### III.

This appeal presents a question not previously treated by this court or, indeed, in the historical jurisprudence on suppression or concealment. We take this opportunity to clarify an apparent misperception of certain opinions of our predecessor court which the Board has cited in support of its holding.

There is over a hundred years of judicial precedent on the issue of suppression or concealment due to prolonged delay in filing. From the earliest decisions, a distinction has been drawn between deliberate suppression or concealment of an invention, and the legal inference of suppression or concealment based on "too long" a delay in filing the patent application. Both types of situations were considered by the courts before the 1952 Patent Act, and both are encompassed in 35 U.S.C. § 102(g). The result is consistent over this entire period—loss of the first inventor's priority as against an intervening second inventor—and has consistently been based on equitable principles and public policy as applied to the facts of each case.

The earliest decisions dealt primarily with deliberate concealment. In 1858, the Supreme Court in *Kendall v. Winsor*, 62 U.S. (21 How.) 322, 328, 16 L.Ed. 165 (1858) held that an inventor who "designedly, and with the view of applying it indefinitely and exclusively for his own profit, withholds his invention from the public" impedes "the progress of science and the useful arts".

In *Mason v. Hepburn*, supra, the classical case on inferred as contrasted with deliberate suppression or concealment, Hepburn was granted a patent in September 1894. Spurred by this news Mason filed his patent application in December 1894. In an interference, Mason demonstrated that he had built a working model in 1887 but showed no activity during the seven years thereafter. The court held that although Mason may have negligently rather than willfully concealed his invention, the "indifference, supineness, or wilful act" of a first inventor is the basis for "the equity" that favors the second inventor when that person made and disclosed the invention during the prolonged inactivity of the first inventor. 13 App.D.C. at 96, 1898 C.D. at 517.

Other early cases affirmed these principles. *Thomson v. Weston*, 19 App.D.C. 373, 381, 1902 C.D. 521, 527, (1902) discussed the situation where a second inventor appeared "during the period of inactivity and concealment". The decisions are consistent, and were codified in section 102(g) of the 1952 Patent Act.

The legislative history of section 102(g) makes clear that its purpose was not to change the law. As described in H.R.Rep. No. 1923, 82d Cong., 2d Sess. 17–18 (1951), section 102(g) "retains the present rules of [the case] law governing the determination of priority of invention". The pre-1952 cases all dealt with situations whereby a later inventor made the same invention during a period of either prolonged inactivity or deliberate concealment by the first inventor, after knowledge of which (usually, but not always, by the issuance of a patent to the second inventor) the first inventor was "spurred" into asserting patent rights, unsuccessfully.

The decisions after the 1952 Act followed a similar pattern,[3] as the courts considered whether to extinguish a first inventor's priority under section 102(g). The cases show either intentional concealment or an unduly long delay after the first inventor's reduction to practice. Some cases excused the delay, and some did not. A few examples will illustrate the application of the statute:

In *Gallagher v. Smith*, 206 F.2d 939, 41 C.C.P.A. 734, 99 USPQ 132 (1953), a seven-year delay (from 1938 to 1945) was excused in the absence of evidence of actual concealment or suppression, as against a later applicant who had a reduction to practice in 1943. Note that the applicant who had delayed was nonetheless the first to file. In *Schnick v. Fenn*, 277 F.2d 935, 47 C.C.P.A. 1174, 125 USPQ 567 (1960), a lapse of nineteen months was excused absent intentional concealment or suppression and in view of the mitigating circumstances of uncertain market demand for the invention. In *Woofter v. Carlson*, 367 F.2d 436, 54 C.C.P.A. 917, 151 USPQ 407 (1966), an eight-year delay after Carlson's reduction to practice was not excused, on evidence that Woofter's entry during this period had spurred Carlson into filing. The court found that there was deliberate concealment, and held that "[u]nder these circumstances, [Carlson] has forfeited its right to a patent". 367 F.2d at 448, 54 C.C.P.A. at 931, 151 USPQ at 416.

In *Brokaw v. Vogel*, 429 F.2d 476, 57 C.C.P.A. 1296, 166 USPQ 428 (1970), Vogel filed a patent application in 1963, having reduced the invention to practice in 1957. Brokaw filed in 1959. The court observed that Vogel remained inactive until he learned of Brokaw's issued patent, and that "there is nothing to show that any step was ever taken by Vogel during that time to make the invention available to the public and nothing tending to excuse Vogel's inaction." 429 F.2d at 480, 57 C.C.P.A. at 1301, 166 USPQ at 430. In *Palmer v. Dudzik*, 481 F.2d 1377, 178 USPQ 608 (CCPA 1973), a first inventor's willful con-cealment of his invention, which continued until news of the junior party's independent invention spurred him to action, required "forfeiture" of his right to the patent in favor of the later inventor, even though in this case the first inventor got to the Patent Office first.

*Young v. Dworkin*, 489 F.2d 1277, 180 USPQ 388 (CCPA 1974), held that a 27-month delay amounted to suppression. Young had refrained from filing a patent application until he had acquired the machines to practice his invention commercially. Focusing on the character of Young's activity between his reduction to practice and filing date, the court found that during Young's prolonged period of inactivity Dworkin conceived the invention and filed his patent application. In concurrence, Judge Rich observed that "it is not the time elapsed that is the controlling factor but the total conduct of the first inventor," adding "[i]t may also be a relative matter, taking into account what the later inventor is doing too." 489 F.2d at 1285, 180 USPQ at 395.

In *Peeler v. Miller*, 535 F.2d 647, 190 USPQ 117 (CCPA 1976), relied on by the Board, Miller was inactive during the four-year period following his reduction to practice, and the proffered excuse (that work of higher priority was done in other areas) was found inadequate. As noted by the Board, there are many similarities with the case at bar. The difference, however, is significant: Peeler had entered the field and filed his patent application while Miller remained dormant; Rizkalla entered the field, according to the record before us, after Paulik had renewed activity on the invention.

In *Horwath v. Lee*, 564 F.2d 948, 195 USPQ 701 (CCPA 1977), the court found an equitable estoppel based on Horwath's "suppression or concealment" of the invention for 66 months. Horwath filed in December 1971, and traced his invention back to an invention disclosure drawn up in April 1967 for which research had begun in

---

**3.** For a thorough historical analysis see Judge Rich's concurring opinion in *Young v. Dworkin*, 489 F.2d 1277, 1282–87, 180 USPQ 388, 393–96 (CCPA 1974).

November 1965. Attempting to account for the delay between the invention disclosure and his patent application, Horwath presented evidence of research to perfect his invention in 1971, well after Lee had filed in 1969. The court found Horwath's excuse inadequate. The same distinction exists as in other cases: the second inventor filed while the first inventor slept.

In *Shindelar v. Holdeman*, 628 F.2d 1337, 207 USPQ 112 (CCPA 1980), cert. denied, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981), also relied on by the Board, there was a delay of two years and five months between reduction to practice and filing. This was held to be too long as against the second inventor who was the first (by two days) to file a patent application. The court held that the filing delay, attributed solely to the attorney's workload, "raised an inference of suppression ... which has not been rebutted". 628 F.2d at 1341, 207 USPQ at 116. The opinion is silent on the question of renewed work by the first inventor before the second inventor entered the field. Although the Board appeared to consider this case controlling as applied to Paulik, we do not see this case as controlling a situation which was not before it. The *Shindelar* court's closing words are: "We reiterate that each case involving the issue of suppression or concealment must be considered on its own particular set of facts." 628 F.2d at 1343, 207 USPQ at 117.

## IV.

The decisions applying section 102(g) balanced the law and policy favoring the first person to make an invention, against equitable considerations when more than one person had made the same invention: in each case where the court deprived the de facto first inventor of the right to the patent, the second inventor had entered the field during a period of either inactivity or deliberate concealment by the first inventor. Often the first inventor had been spurred to file a patent application by news of the second inventor's activities. Although "spurring" is not necessary to a finding of suppression or concealment, see *Young v. Dworkin*, 489 F.2d at 1281, 180 USPQ at 391–92 and citations therein, the courts' frequent references to spurring indicate their concern with this equitable factor.

Some decisions used the word "forfeiture" to describe the first inventor's loss of priority; but none interpreted section 102(g) as requiring an absolute forfeiture rather than requiring a balance of equities. In *Brokaw v. Vogel*, for example, the court said "the *Mason v. Hepburn* principle is not a forfeiture in the true sense; rather it is a rule according to which the patent right goes to the most deserving. Realistically, it is a forfeiture by the de facto first inventor of the right to rely on his earlier reduction to practice." 429 F.2d at 480, 57 C.C.P.A. at 1302, 166 USPQ at 431. In *Young v. Dworkin* Judge Rich wrote "I cannot agree with the board that the question in this case is whether Young 'forfeited his *right to a patent*'. But for Dworkin's conflicting claim, Young forfeited nothing and would get a patent. All he *forfeited* ... was the right to rely on his prior actual reduction to practice in a priority dispute." 489 F.2d at 1286, 180 USPQ at 395–96 (emphases in original).

In no case where the first inventor had waited "too long" did he end his period of inactivity before the second inventor appeared.[4] We affirm the long-standing rule that too long a delay may bar the first inventor from reliance on an early reduction to practice in a priority contest. But we hold that the first inventor will not be barred from relying on later, resumed activity antedating an opponent's entry into the field, merely because the work done

---

**4.** The Board has recently drawn a distinction with cases where a first inventor who waited too long was nevertheless the first to file a patent application. The Board treated the constructive reduction to practice as evidence negating suppression despite the long period of inactivity, and in *Connin v. Andrews*, 223 USPQ 243 (Bd.Pat.Inf.1984), permitted the delaying senior party to rely on his early work.

before the delay occurred was sufficient to amount to a reduction to practice.

This result furthers the basic purpose of the patent system. The exclusive right, constitutionally derived, was for the national purpose of advancing the useful arts—the process today called technological innovation. As implemented by the patent statute, the grant of the right to exclude carries the obligation to disclose the workings of the invention, thereby adding to the store of knowledge without diminishing the patent-supported incentive to innovate.

But the obligation to disclose is not the principal reason for a patent system; indeed, it is a rare invention that cannot be deciphered more readily from its commercial embodiment than from the printed patent. The reason for the patent system is to encourage innovation and its fruits: new jobs and new industries, new consumer goods and trade benefits. We must keep this purpose in plain view as we consider the consequences of interpretations of the patent law such as in the Board's decision.

A foreseeable consequence of the Board's ruling is to discourage inventors and their supporters from working on projects that had been "too long" set aside, because of the impossibility of relying, in a priority contest, on either their original work or their renewed work. This curious result is neither fair nor in the public interest. We do not see that the public interest is served by placing so severe a sanction on failure to file premature patent applications on immature inventions of unknown value. In reversing the Board's decision we do not hold that such inventions are necessarily entitled to the benefits of their earliest dates in a priority contest; we hold only that they are not barred from entitlement to their dates of renewed activity.

### V.

■ Paulik also appeals from the Board's refusal to consider evidence offered during his rebuttal period. The Board relied on the provision in 37 C.F.R. § 1.251(b) that only rebuttal testimony can be taken during the rebuttal period, and

held that since Rizkalla had taken no testimony during the period assigned to him for that purpose, there was nothing to rebut. The Board found that Paulik's proffered rebuttal testimony was merely an enlargement of his testimony-in-chief, and that no reason was given why this testimony was not earlier presented. The Board also refused to consider a document (Exhibit 18) which had not been timely served or moved.

We discern no abuse of discretion in the Board's application of these standard evidentiary rules.

### VI.

Having established the principle that Paulik, although not entitled to rely on his early work, is entitled to rely on his renewed activity, we vacate the decision of the Board and, in the interest of justice, remand to the PTO for new interference proceedings in accordance with this principle.

VACATED AND REMANDED.

RICH, Circuit Judge, concurring.

I am in full agreement with Judge Newman's opinion. I write in order to express some additional thoughts respecting 35 U.S.C. § 102(g) as a member of the group which drafted that section, which was new in the Patent Act of 1952, our current statute.

Section 102(g) is pivotal in deciding the priority issue in this case. In my view, considering what I know to have been the intent of the section, it has been thoroughly misapplied by the board and the dissent here, in a manner unsupported by any prior decision of which I am aware. This the board has done by applying to § 102(g) a kind of stultifying literalism, devising out of whole cloth novel propositions of law by misconstruing a section which was intended to be merely a codification of preexisting case law precedents well established in priority disputes, principally in interference practice, as I shall explain.

The complete story of the drafting of the 1952 Patent Act is told in an article I wrote a decade after it came into effect, entitled "Congressional Intent—Or, Who Wrote the Patent Act of 1952?" published for the Southwestern Legal Foundation by BNA in a book entitled "Patent Procurement and Exploitation" (1963) and reprinted in Witherspoon, "Nonobviousness—The Ultimate Condition of Patentability" (BNA 1980). I assured the factual accuracy of the article by submitting it before publication for correction and supplementation to the people most involved. The key person was the late P.J. Federico of the then Patent Office. His official title was Examiner-in-Chief, meaning that he was a member of the Board of Appeals. But at the time involved (1949–1952), and earlier, he was more than that: he represented the Patent Office on legislative matters before Congress and was a close advisor to a succession of Commissioners of Patents. Because of this, in the regime of Commissioner Kingsland, when the House subcommittee on patents decided, in its other capacity as the Committee on Codification of the Laws, to codify Title 35, it fell to Federico to write the first draft of the 1952 Act. That draft was then taken in hand, in collaboration with Federico and the subcommittee staff, by a "Coordinating Committee" of the national patent bar chaired by Henry Ashton of New York. This committee had a two-man Drafting Committee, consisting of Paul A. Rose of Washington and myself, which worked with Ashton, Federico, and the subcommittee staff in putting together the several revisions of the bill which eventually became law. These people were the working nucleus of the full Coordinating Committee which consisted of representatives of thirty patent law associations, patent committees of general bar associations, and industrial associations, which met from time to time and provided much expert input on a nationwide basis. That, in brief,

is the explanation of how I became familiar with the purposes and intents of the drafters underlying what I have to say here.

I should also like to explain some further and perhaps now little known facts with respect to Federico's work. He not only wrote the first draft of the Act himself and actively participated for the next two years in every detail of its revisions but, having been made a special consultant to the House subcommittee in charge of the project, he was also a principal author of House Report No. 1923 on the bill, which was virtually copied by the Senate Judiciary Committee as its report No. 1979, and the author of the section-by-section Revisors Notes. He submitted the latter to Ashton and the Drafting Committee for suggestions. Federico, Ashton, and the members of the Drafting Committee then became principal witnesses at the hearings held by the House Subcommittee June 13–15, 1951, on H.R. 3760, the only hearings held. After enactment of the law, West Publishing Company asked Federico to write a commentary on it for publication in U.S.C.A., which he did, and it was published in 1954 in the first of the volumes containing the new Title 35.[*] Federico also submitted drafts of the commentary to Ashton and the Drafting Committee for suggestions and thus I became very familiar with it prior to its publication.

Against this background, I will now explain how and why § 102(g) got into the Patent Act. Federico's first draft did not contain such a section. Early in the work of the Coordinating Committee, Federico pointed out that because the Act repealed all of the old patent statutes, including R.S. 4920, the "second defense" of which had always been assumed to be a justification for interference proceedings, the statutes would no longer contain such justification and something would have to be done about it. That section of the old statute,

---

[*] In the replacement Title 35 volume supplied to subscribers within the past few months, the much-cited Federico *Commentary On The New Patent Act* has, for some inexplicable reason, been omitted. It is suggested that those still in possession of the old volume take pains to retain it.

which was § 61 of the Act of 1870, read in pertinent part as follows:

> Sec. 4920. R.S. In any action for infringement the defendant may plead the general issue, and having given notice in writing to the plaintiff or his attorney thirty days before, may prove one or more of the following special matters.
>
> . . . .
>
> Second: That he had surreptitiously or unjustly obtained the patent for that which was in fact invented by another, who was using reasonable diligence in adapting and perfecting the same; . . . .

Federico therefore brought in a proposed new section, 22–A, to follow § 22 of his original draft, which was later to become § 102, containing, inter alia, the following:

> (b) the invention was in fact invented before the applicant's invention thereof by another who had not abandoned the invention and who was using reasonable diligence in adapting and perfecting the same.

The parallel with the second defense of R.S. 4920 is clear. The Coordinating Committee adopted it at a May 9–10, 1950, meeting and it was incorporated as § 102(g) in the first bill to be introduced in Congress, H.R. 9133, 81st Cong., 2d Sess., July 17, 1950. This bill was given wide circulation and many suggestions and criticisms resulted. One was that under existing law the prior invention by "another" must have been "in this country." Therefore, § 102(g) of the next bill, H.R. 3760, 82nd Cong., 1st Sess., April 18, 1951, read:

> (g) before the applicant's invention thereof the invention was in fact made in this country by another who had not abandoned it and who was using reasonable diligence in this country in reducing it to practice or had reduced it to practice.

In the reported hearings on H.R. 3760, p. 31, Ashton told the House subcommittee that the Coordinating Committee had met May 22, 1951, and had adopted a list of suggested changes in the bill, which list had been previously submitted to the House subcommittee. The list is printed at p. 33 of the hearings and includes the following very pertinent item under § 102:

> Paragraph (g): The Coordinating Committee was not satisfied with either the language of the Bill or the suggested changes proposed at the meeting since none of them wholly took care of the situation. The matter was left to Mr. Federico to prepare a redraft. After consultation with others Mr. Federico recommends the following paragraph *which is intended to codify the existing law* [emphasis mine]:
>
> "(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other."

*That recommended language is the statute as it is today.* Its exact origin is obscured by time. It is of interest to note, however, from the aforesaid hearings (p. 51), that it was also adopted in the proposal for changes made to the subcommittee on behalf of the National Association of Manufacturers committee on patents in the testimony of its advisor, Mr. George E. Folk, who was a very active member of the Coordinating Committee and whose expertise in patent law was manifest from his career of 53 years. It included 2 years as a Patent Office examiner, *5 years in the Interference Division thereof writing opinions on priority*, 10 years in private practice, 22 years in the patent department of American Telephone & Telegraph Co., of which he became head, and 13 years with the NAM committee. (Hearings, p. 53.)

Testimony on § 102(g) before the subcommittee included: *Federico:* "Paragraph (g) relates to the question of priority of invention between rival inventors." (Hearings, p. 38) The Revision Note in House Report No. 1923 says of paragraph (g):

"This paragraph retains the present rules of law governing the determination of priority of invention" (p. 18). The text of the Report makes the same statement Federico made in his testimony. All that Federico had to say about § 102(g) in his 1954 U.S. C.A. Commentary was this:

> Paragraph (g) relates to prior inventorship by another in this country as preventing the grant of a patent. It is based in part on the second defense in old R.S. 4920 ... and *retains the rules of law governing the determination of priority of invention developed by decisions.* [Emphasis mine.]

Charles J. Zinn, who was codification counsel to the House patents subcommittee during the drafting of the 1952 patent act and who was intimately familiar with it, also wrote a commentary published in the Dec. 20, 1952, U.S.Code Congressional and Administrative News as a special section. All he had to say about § 102(g) was this (p. 7):

> The provisions relating to the determination of priority of invention contained in subparagraph (g) *are unchanged in substance.* [Emphasis mine.]

That is to say, they were unchanged from existing priority law as the courts had made it. Nowhere in the whole legislative history is there even a hint of any concept of forfeiture such as the dissenting opinion herein would apply.

Anyone having a scholarly interest in the philosophy underlying the old law will find much of it in *Robinson on Patents* § 390 (1890) and the cases reviewed in its footnotes.

### The Words "suppressed, or concealed" in § 102(g) Have No Definite Meaning

These words were included in the section with no other intention than to codify pre-existing case law pertaining to priority determinations in interferences or infringement suits. One must, therefore, look to the prior cases and the fact situations involved in them to determine what is meant by "suppressed, or concealed." Their import cannot be ascertained merely by consulting dictionaries or one's inner consciousness. Those drafting the section were well aware that these terms do not explain themselves. In contemporaneously reporting on the Bill to the New York Patent Law Association in November, 1952, between its enactment and its effective date, January 1, 1953, I explained, in a talk of which about 1000 copies were distributed:

> The purpose of paragraph (g) is to codify the law on determining priority, and it also preserves in the statutes a basis for interferences. It uses the words (which are new in this connection in this statute) "abandoned, suppressed, or concealed." And for the meaning of those words you will have to look into the case law, such cases, for example, as *Mason v. Hepburn,* 13 App.D.C. 86 [1898], and the cases following it and not following it.

In *Mason v. Hepburn,* there was a period of 7 years between Mason's actual reduction to practice of the invention (a magazine clip for a gun) and his filing of a patent application. The court said:

> Not having been given or abandoned to public use there was *nothing in the mere lapse of time to prevent Mason receiving a patent.* (Bates v. Coe [8 Otto 31], 98 U.S., 31, 46 [25 L.Ed. 68] [1878].) [My emphasis.]

What the Supreme Court said in *Bates v. Coe* was this:

> Inventors may, if they can, keep their inventions secret; and if they do for any length of time, *they do not forfeit their right* to apply for a patent, unless another *in the mean time* has made the invention, and secured by patent the exclusive right to make, use, and vend the patented improvement. Within that rule and subject to that condition, *inventors may delay to apply for a patent....* [Emphasis mine.]

I am merely reporting what the Court said; I do not subscribe to the notion that the second inventor must have *secured a patent,* for the law has clearly evolved a less stringent rule. I merely emphasize that

there is no rule of forfeiture from mere lapse of time without activity, nor has there ever been such a rule.

The *Mason v. Hepburn* decision was that Mason, the first inventor in fact, having "concealed" his invention for 7 years by doing nothing with it after an actual reduction to practice, and having filed his application *only after seeing Hepburn's patent* in the Patent Office Official Gazette, was not entitled to the *priority* award in the interference. The court said "Hepburn must be held to be the first inventor in the sense of the law regulating the grant of patents (Rev.Stat. sec. 4886.)." The important fact is that *Hepburn entered the field while Mason was doing nothing,* which he would probably have continued to do but for having been spurred into activity by seeing Hepburn's patent. Here, by contrast, *Paulik was actively proceeding to patent before Rizkalla did anything* (on the record before us). The court also rested its decision on equitable principles, winding up its opinion with the following:

> The true ground of the doctrine, we apprehend, lies in the spirit and policy of the patent laws and in *the nature of the equity that arises in favor of him who gives the public the benefit of the knowledge of his invention,* who expends his time, labor, and money in discovering, perfecting, and patenting in perfect good faith that which he and all others have been led to believe has never been discovered by reason of the *indifference, supineness, or willful act* of one who may, in fact, have discovered it long before. [My emphasis.]

*Robinson On Patents* § 390, supra, preceded that opinion by 8 years and was cited in it. It supplied the basic philosophy.

As Judge Newman has pointed out, the numerous CCPA/CAFC cases have applied *equitable* principles on a *case-by-case basis* to these priority problems. Doing the same here, the only sanction it is proper to apply against Paulik is to deprive him of the right, as against Rizkalla, to rely on the *date* of his earlier reduction to practice in establishing "priority" because of the long delay thereafter, while *sustaining his right to rely on the time of his revived activity* if it is connected by diligence to his filing date. If that revival date antedates the earliest date established by Rizkalla, given that diligence, Paulik is entitled to the priority award. This procedure would be far from novel. It is exactly what was stated to be the law over a century ago in *Farmer v. Brush,* 1880 C.D. 5 (digested in fn. 1, Robinson § 390, supra), where Commissioner Paine said (p. 8):

> He [the inventor] may abandon or forget his invention, provided he resumes or recalls it before another makes the invention. But his rights do not, in either case, relate back through the intermediate *"vacuum"* to the original invention, so as to give him the benefit of its date against a rival inventor.

The *Mason v. Hepburn* principles have been applied in several CCPA opinions applying the "suppressed or concealed" concept to a variety of fact situations of great diversity. It may truthfully be said that each case has given a new shade of meaning to the statutory words, as does the present case, and only thus is their true import evolved.

In short, "suppressed or concealed" means only what courts say it means in each case. It is like deciding obviousness or negligence. No prior case—as can be assumed from the fact that this is a case of first impression, nothing to the contrary having appeared—compels the meaning which has been given to these words by the board herein. *Deciding whether a party has "suppressed or concealed" is arriving at a conclusion of law, not finding a fact.* In each case, the question is whether the facts as to what was or was not done lead to the legal conclusion of "suppressed, or concealed."

To put the finger on the crucial flaw in the board's reasoning, I find it in these statements:

> We agree with Rizkalla that even if Paulik demonstrates continuous activity from *prior to the Rizkalla effective filing date* to his filing date that such

would have *no bearing* on ... priority. . . .

. . . .

It is of *no significance* in the case of a party who is not the *last* to reduce to practice. [My emphasis.]

It must be recognized that we are deciding a priority issue: which party is to be regarded as the "first" inventor *in law*, regardless of fact. The award, as the CCPA several times decided, should be to the one most deserving from a policy standpoint. In deciding who is prior in law, every fact has a "bearing" and is of "significance" and must be weighed on the scales of justice. It is of the utmost significance here whether Paulik was actively proceeding to patent his invention *prior* to any date established by Rizkalla, and thus the *first* to be on the way to giving the public the benefit of the invention. That is what a "priority" decision is all about.

Rizkalla and the board are simply playing games with the language of paragraph (g), which was not written to be given a hypertechnical construction but merely in an attempt to sum up concisely existing priority law based on over a century of precedents, an attempt which proved to be rather difficult even for experts.

With respect to the board's playing with the words of paragraph (g), it was, of course, trying to make something out of the phrase "the reasonable diligence of one who was first to conceive and *last* to reduce to practice" (my emphasis), in effect saying that Paulik's diligence from before Rizkalla's earliest date to Paulik's filing date is of "no significance" because Paulik was not the last but *the first* to reduce to practice! But the reason (g) was worded as it was, as I have explained above, is that it was an effort to restate concisely fundamental interference or priority law. In that law, it was, and still is, an elementary principle that one who is *both* the first to conceive and *first* to reduce to practice *does not have to show diligence at all.* Underwood's *Interference Practice* § 74 (1928); Rivise and Caesar, *Interference Law and Practice*, Ch. XIII, especially

§§ 173 and 174(2) (1940). To take a statement that diligence *shall* be considered in the situation where it had long been required and turn it into a prohibition to consider it, or a ground for refusing to consider it, is about as perverse a construction as can be imagined. The old rule just stated does not, of course, apply here to Paulik's need to show diligence connecting his revived activity from just prior to Rizkalla's earliest proven date to his filing date or a reduction to practice, according to the established law. The statute does not deal with the situation here.

Since the drafters of § 102(g) were only trying to provide a basis for interferences in the statute and state existing case law, no other "intent" can be attributed to Congress, especially an intent to create a forfeiture.

### The Cases—None Has Decided This Issue

A case is binding precedent for what it *decides,* not for everything the author happens to say in the supporting opinion, especially when separated from its factual background.

Two cases are relied on. They are *Peeler v. Miller* and *Shindelar v. Holdeman.*

I wrote *Peeler.* It has been characterized as virtually identical to the present case in its significant aspects, but it definitely is not. Peeler filed his patent application *while Miller was inactive and 9 months before Miller resumed activity* directed toward filing. Whatever I said in the opinion was in connection with that fact situation. Had the facts been as they are here, I would have decided differently. Only by ignoring this significant difference can *Peeler* be made to resemble this case.

*Shindelar,* in which I of course participated, was decided, as the opinion makes amply clear (628 F.2d at 1343, 207 USPQ at 117), on the basis that it was indistinguishable from *Peeler,* and Shindelar was held to have "suppressed or concealed" by reason of a 2½ year delay between a reduction to practice of his hay baler and the filing of

the patent application, at least two years of which were "unaccounted for." The fact situation before this court in the present case was, of course, not considered in the opinion, notwithstanding one could deduce that Shindelar's assignee's attorney must have done some work on the application more than 2 days before it was filed. (The parties filed within two days of each other.) However, if one takes that speculative approach to the case, it would also have to be speculated that Holdeman's attorney must have been working more than two days also; and who could say who was prior? But cases must be interpreted according to the facts of record involved in them. Holdeman elected to rely on his earlier filing date, which had made him senior party, thus placing the burden of proof on Shindelar, and the CCPA decided the case accordingly. What I particularly point out about *Shindelar* is that the opinion both opens and closes with the admonition that "each case involving the issue of suppression or concealment must be considered on its own particular set of facts." The set of facts here was not there considered. It is therefore no precedent here.

The *Shindelar* opinion (628 F.2d at 1342, 207 USPQ 116, col. 1) contains an erroneous statement of "public policy inherent in § 102(g)," with a footnote to dictum in *Horwath v. Lee*, 564 F.2d at 950, 195 USPQ at 703, where it was said:

> Against the rule that mere delay will not alone establish suppression or concealment stands the linchpin of the patent system—early public disclosure—*which is fostered by the § 102(g) codification of existing law . . . .* [My emphasis.]

These statements require modification or explanation or both. I think what the author probably had in mind is the patent system's *policy of inducing public disclosure* of invention by offering a right to exclude, because as the Supreme Court has held, there is no requirement on an inventor for early filing. There is no statutory requirement for early filing. Section 102(g) deals only with priority disputes,

which are between private parties, and with respect to them *courts* take into consideration which inventor is first to proceed toward *patenting* and *thereby* toward public disclosure.

An inventor can delay as long as he likes, in the absence of commercialization (*see Metallizing Engineering Co. v. Kenyon Bearing and Auto Parts Co.*, 153 F.2d 516, 68 USPQ 54, *cert. den.*, 328 U.S. 840, 66 S.Ct. 1016, 90 L.Ed. 1615 (1946)), if he is willing to risk having to show *in an interference* or in facing a *defense of prior invention* that he has the *better* right to the patent as between the contesting parties. On the facts shown by the present record, Paulik appears to have the better right when *equities*, rather than statements in opinions on unlike fact situations, are considered. And, finally, there is a question of fairness; why should Paulik be penalized for having done early work if, without reliance on it, he is still ahead of Rizkalla? There is more to § 102(g) than its bare words, namely, over a century of carefully thought out case law which must not be ignored in construing it. Two or three recent opinions dealing with entirely different fact situations do not control.

MARKEY, Chief Judge, additional views.

I agree with the opinions of Judges Newman and Rich. I write only to explicate the importance, as I see it, of those opinions to the functioning of the patent system and the effect of our decision on inventors whether self-employed, employed by small businesses, or employed by large corporations.

The sole issue is priority of invention. Though patents frequently issue after the conduct of interference proceedings, they need not. Patentability is not ancillary to priority. *Correge v. Murphy*, 705 F.2d 1326, 217 USPQ 753 (Fed.Cir.1983).

On this record, Paulik was the actual first inventor. Because his corporate employer took no action to file on the disclosure he made to its patent department for a period of about four years, the Board held that he had suppressed or concealed the

invention. The Board disregarded the renewed activity of Paulik's patent department, even though that was one or two months *before* the earliest date relied on by Rizkalla in this interference (his March 10, 1975 filing date). Paulik's renewed activity resulted in the filing of his patent application on June 30, 1975, which was fifteen weeks after Rizkalla's earliest date. On that basis, the Board awarded priority of invention to Rizkalla, the second inventor on this record.

The notion that a period of inactivity following a reduction to practice or, as here, following disclosure to a patent department, cannot be cured before the earliest date of another is at best draconian. On the present facts, no basis exists for considering Paulik a Pariah.

A literal reading of § 102(g) is not here involved. That statute says not a word on whether a suppression or concealment can or cannot be cured before the filing date of another. The court is therefore presented with a choice. Operating in the interstices of the statute, the court may read § 102(g) as permitting or forbidding such curing. Given that choice, it would seem imperative that the court choose the rule least disruptive of the daily workings of the patent system.

Nothing in the statute or in the cases requires the promulgation by this court of a rigid rule describable only as "once a suppressor, always a suppressor." If, for example, Paulik's renewed activity had resulted in the filing of his application fifteen weeks and one day sooner, I cannot suppose that the Board or any court could properly require an award of priority to Rizkalla on the present record. Similarly, if Rizkalla had never filed, I cannot suppose that a patent issuing on Paulik's application could be subsequently attacked on a suppression or concealment rationale. Again similarly, if Rizkalla had provoked an interference with that issued patent of Paulik, I cannot suppose that Paulik would not be entitled to rely at least on his date of renewed activity.

In this case, Paulik took steps, *before* Rizkalla's earliest date, to make the invention publicly known. In *Correge, supra,* this court quoted this (at 1330) from the Court of Claims opinion in *International Glass Co. v. United States,* 408 F.2d 395, 403, 187 Ct.Cl. 376, 390, 159 USPQ 434, 441 (1968):

> The courts have consistently held that an invention, though completed, is deemed abandoned, suppressed, or concealed if, within a reasonable time after completion, *no steps are taken* to make the invention publicly known. [Emphasis added.]

The patent system does not operate in a vacuum. Patent applications are expensive. Nothing in the law precludes a pause in a series of steps taken to make an invention publicly known. The risk that another may file during a pause period is sufficient to discourage suppressors and concealers. For this court effectively to require that applications be filed on every shadow of a shade of an idea immediately upon its conception, or risk loss of the opportunity to patent (and potentially the right to make, use, or sell the invention), would impose a new and onerous rule. To render a restart after a pause meaningless does not contribute to a smooth working of the patent system. That result is neither required by statute nor intended by Congress. The rich corporation might well be able to flood the Patent Office with rushed applications and with refilings of those applications, avoiding all pauses on the way to filing a patent application. Less affluent businesses and individual inventors, however, would find it extremely difficult, if not impossible, to participate in a patent system so conducted.

On the other hand, I can see no harm to the patent system in a determination that a period of inactivity can be cured by a resumption of activity before the filing date of another and a requirement that the question of priority be then fought out on the basis of the date of renewed activity on the one side and whatever may be the earliest date established on the other side.

FRIEDMAN, Circuit Judge (with whom DAVIS, KASHIWA, BENNETT and JACK R. MILLER, Circuit Judges, join), dissenting.

I think that in awarding priority to Rizkalla, the Board properly applied section 102(g) and the pertinent precedents of this court. I therefore would affirm.

1. In section 102(g), Congress provided that a person is entitled to a patent unless "before the applicant's invention ... the invention was made in this country by another who had not abandoned, suppressed, or concealed it." Two decisions of the Court of Customs and Patent Appeals, *Peeler v. Miller*, 535 F.2d 647, 190 USPQ 117 (CCPA 1976), and *Shindelar v. Holdeman*, 628 F.2d 1337, 207 USPQ 112 (CCPA 1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981), held that an unreasonable delay between the reduction to practice and the filing of the patent application constituted "suppression" of the invention under section 102(g) that barred the earlier but suppressing inventor from obtaining priority in an interference proceeding over the later inventor.

The facts in *Peeler* are virtually identical to those here. There, as here, approximately four years elapsed between the reduction to practice and the filing of the patent application, and "much, if not all, of the delay occurred while the disclosure lay dormant in Monsanto's patent department." 535 F.2d at 653–54, 190 USPQ at 122. In reversing the decision of the Board of Patent Interferences that the delay did not constitute suppression under section 102(g) because "there was no evidence that Miller intended to suppress the invention or in fact did so," 535 F.2d at 650, 190 USPQ at 119, the Court of Customs and Patent Appeals held that "proof of specific intent to suppress is not necessary where the time between actual reduction to practice and filing is unreasonable. This unreasonable delay may raise an *inference* of intent to suppress." 535 F.2d at 653, 190 USPQ at 122 (emphasis in original). It also stated:

> In our opinion, a four-year delay from the time an inventor is satisfied with his invention and completes his work on it and the time his assignee-employer files a patent application is, prima facie, unreasonably long in an interference with a party who filed first.... The record, however, contains nothing to show that the delay was other than fully within Monsanto's control at all times.

535 F.2d at 654, 190 USPQ at 122–23.

The court further pointed out that "the unreasonable length of a delay *may* be ample circumstance in itself to find suppression." 535 F.2d at 655, 190 USPQ at 123.

In *Shindelar*, the Court of Customs and Patent Appeals upheld a decision of the Board of Patent Interferences that a delay of two years and five months between the patent attorney's receipt from the inventor of the information necessary to prepare the patent application and the filing of the application constituted suppression of the invention under 35 U.S.C. § 102(g). In holding that that delay was "unreasonably long," the court concluded that "there is no reasonable basis on which to differentiate this case from *Peeler v. Miller*, and the same result is therefore compelled, i.e., a holding of suppression as a matter of law." 628 F.2d at 1342, 207 USPQ at 117.

The court does not deny that Paulik's four-year delay constituted prima facie suppression. Indeed, it could do so only by overruling *Peeler* and *Shindelar*. The court also states that "the legal inference of suppression or concealment based on 'too long' a delay in filing the patent application ... [is] encompassed in 35 U.S.C. § 102(g)."

The court holds, however, that Paulik's "resumed activity" following his four-year suppression "must be considered as evidence of priority of invention." It reviews the cases dealing with "the issue of suppression or concealment due to prolonged delay in filing" and concludes that the results were "based on equitable principles and public policy as applied to the facts of each case." Noting the statement in the House Report that section 102(g) "retains the present rules of law governing the de-

termination of priority of invention," the court holds that section 102(g) incorporated the prior case law, which it interprets as making the equities of the particular case the touchstone for determining priority of invention. It concludes that Paulik is entitled to priority "if [he] resum[ed] work on the invention before the second inventor enter[ed] the field."

I do not think that the language in section 102(g) leaves any room for considering the respective equities of (i) an earlier inventor who admittedly has suppressed or concealed his invention for an unreasonably long period and (ii) a later inventor who acted promptly in seeking the patent and was, in fact, first to file. Section 102(g) speaks in clear, simple, prohibitory terms. An inventor who has "abandoned, suppressed, or concealed" his invention is not entitled to priority as against a subsequent inventor who has not engaged in that conduct. Congress itself has made the judgment that in that situation the equities lie with the second inventor, not with the first. Under the statute, there is no room for the Board or the court to second-guess that congressional determination on the basis of the tribunal's own perception of where the equities lie in a particular case.

There is nothing in the language or purpose of section 102(g) that justifies the court's newly minted gloss upon the text of making priority depend upon the date of the suppressing inventor's "resumed work" looking to the filing of a patent application. The statute gives priority to the applicant by whom "the invention was made" first and who has not suppressed or concealed it. The court does not disturb the Board's determination that Paulik "made," i.e., reduced to practice, the invention long before he asserts he "resumed work" on it, and that his lengthy delay itself constitutes prima facie suppression. The court does not, and cannot, point to any language in the statute that supports its result. Instead, it relies only upon general policy arguments that allegedly reflect the equities between the two parties to the interference. As stated, I do not think the statute contemplates or permits such an inquiry.

2. If the equities of this case are to be considered, however, I do not think they favor Paulik (or the real party in interest, Monsanto) over Rizkalla. The reason Paulik's invention was intentionally suppressed for four years after it had been reduced to practice was because the Monsanto patent department, where the information regarding the invention was resting, gave higher priority to other matters. Paulik did not file until five or six months after the renewed activities, which was three-and-a-half months after Rizkalla filed. Paulik's behavior was "indifferen[t]" and "supine[ ]." *Mason v. Hepburn*, 13 App. D.C. 86, 96, 1898 C.D. 510, 517 (1898). Here, as in *Peeler*, there was nothing to show that "the delay was other than fully within Monsanto's control at all times." 535 F.2d at 653, 190 USPQ at 122.

The court states that "[i]n January or February of 1975 the assignee's patent solicitor started to work toward the filing of the patent application." The cause of the renewed activity, however, was not a determination by the solicitor that under Monsanto's schedule of priorities it was time to begin processing the Paulik application. According to the Board, a Mrs. Sporar, a patent agent of Monsanto, at that time "had informed Mr. Passley [a Monsanto patent attorney] that her docket was very low and she needs some work." Mr. Passley then assigned the Paulik invention to her. The renewed activity thus resulted from happenstance. There is no indication that if Mrs. Sporar had not sought additional work, the Paulik invention would not have lain fallow for a further additional period.

Under these circumstances, I fail to see how Paulik has a "better right" to priority solely because of a some six-week head-start in the application writing process.

The precise rationale of the court's decision is unclear to me. Perhaps the court is holding that evidence of Paulik's renewed activity following the period of suppression rebuts the prima facie case of suppression that the unreasonable delay established. I

think, however, that the only way a prima facie case of such suppression may be rebutted is by showing justification for the suppression itself; it cannot be rebutted by evidence of action taken after the suppression has ended. Moreover, if Paulik's renewed activity somehow "cured" the suppression, the consequence should be that he may rely on the date of his reduction to practice, a result the court specifically rejects.

On the facts of this case, the court's concern that the Board's ruling places a "severe ... sanction on failure to file premature patent applications on immature inventions of unknown value" is misplaced. It ignores the fact that Paulik's invention was reduced to practice more than four years before he filed his patent application. There is no suggestion that with due diligence Monsanto could not have protected Paulik's priority of invention by filing an application covering a fully perfected invention long before Rizkalla filed. Had it done so, others in the field might have been able to avoid needlessly duplicative work.

3. The court remands the case to the Board "for new interference proceedings in accordance with the principle" that "Paulik, although not entitled to rely on his early work, is entitled to rely on his renewed activity" to establish priority. I assume that in the new interference proceedings Rizkalla may rely on a date earlier than his filing date, although the court does not explicitly so state.

Since the Board assigned Paulik, the junior party, a period for rebuttal testimony, Rizkalla apparently did not "expressly elect[ ] to rely solely on his effective filing date" in his preliminary statement. 37 C.F.R. § 1.251(b) (1984). Accordingly, when Rizkalla relied on his filing date, he may have done so because of his view that Paulik's four-year delay in filing itself would defeat Paulik's attempt to backdate the priority of his later filing date. In view of the court's holding that Paulik's delay does not necessarily bar him from obtaining priority, simple fairness and equity require that Rizkalla be permitted to show, if he can, that he began diligently working on

the invention (or perhaps that he reduced it to practice) before Paulik resumed work in January or February of 1975.

4. Although one might think that determining which of two or more inventors was the first inventor would be a relatively simple task, this is not necessarily the case. Interference proceedings may be extremely lengthy and complicated. The inquiry that the court now opens up in cases of suppression due to delay is likely to inject still further protracted issues into interference proceedings. For example, precisely what activity by the suppressing inventor will suffice to show that he has "resumed activity?" What showing by the earlier-filing non-suppressing inventor will overcome such showing by the suppressor? How much must each party show to carry its burden? Although these are questions for the Board to determine in the first instance, I fear that the court's decision inevitably will further complicate many already over-complicated proceedings.

5. Whatever one may think of the court's decision as a matter of policy, I think that Congress itself has spoken to this issue and has resolved it against the court's view. If section 102(g) is to be changed to accomplish the result the court here achieves, I think that the Congress and not the court is the body to take that action.