Robert O. HORWATH and James C. Chen, Appellants,

v.

Chin K. LEE, Lawrence E. Hayes and Margaret E. Long, Appellees,

v.

Margaret E. LONG, Appellee.

Appeal No. 77–561.

United States Court of Customs and Patent Appeals.

Nov. 10, 1977.

Louis F. Reed, Fish & Neave, Aaron B. Karas, New York City, attys. of record, for appellants.

John J. Cavanaugh, Neuman, Williams, Anderson & Olson, Chicago, Ill., attys. of record, for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

Appeal from the decision of the Board of Patent Interferences (board) awarding priority to Long under 35 U.S.C. § 102(g) because Horwath et al. (Horwath) suppressed or concealed the invention. We affirm.

### Background

Horwath is junior by virtue of application serial No. 207,573 filed December 13, 1971, entitled "Process for Enzymatically Isomerizing Glucose to Fructose." Lee et al. (Lee) are senior by virtue of patent No. 3,645,848 issued February 29, 1972, entitled "Process for Preparing Glucose Isomerase," on application serial No. 877,474 filed November 17,

1969. During the motion period, Lee moved to substitute application serial No. 361,548, filed by Long for reissue of Lee patent No. 3,645,848,[1] it having been discovered that Long was the sole inventor of the counts in issue. The primary examiner treated the motion to substitute as a motion to add the Long reissue application to the Lee-Horwath interference and granted it. Lee admitted that as between Lee and Long, "Long is the original and sole inventor of the subject matter of all of the counts in interference." Thus, this interference is a contest between Horwath and Long.

Long took no testimony and is restricted to her November 17, 1969, filing date. *Frilette v. Kimberlin*, 412 F.2d 1390, 56 CCPA 1242 (1969). Horwath's testimony, the board found, established an actual reduction to practice prior to November 17, 1969.

### Counts and Subject Matter

Six counts are involved. Counts 1 and 2 are directed to a process for preparing a glucose-isomerizing enzyme, using a microorganism of the genus *Arthrobacter*. Counts 3–5, and phantom count 6, are directed to a process for isomerizing glucose to fructose, using the glucose-isomerizing enzyme derived from the microorganism *Arthrobacter*.

Counts 1, 3 and 6 are representative:

1. A process for preparing a glucose-isomerizing enzyme which comprises inoculating a carbohydrate-containing nutrient medium with a micro-organism belonging to the genus *Arthrobacter*, maintaining the inoculated medium for a period of time under conditions suitable for production of said enzyme by said organism and recovering said enzyme.

3. A process for converting glucose to fructose which comprises incubating a glucose-containing liquor with a glucose-isomerizing enzyme derived from a microorganism belonging to the genus *Arthrobacter* and recovering a fructose-containing liquor.

6. A process for converting glucose to fructose which comprises incubating a glucose-containing liquor with a glucose-isomerizing enzyme derived from a microorganism belonging to the genus Arthrobacter and recovering a fructose-containing liquor said incubation is carried out at a temperature of about 45° to about 90°C in a pH range of approximately 6.0 to 10.0 and said enzyme is derived from an Arthrobacter micro-organism grown in a nutrient medium containing xylose or xylan.

The board held that Horwath established actual reduction to practice, by a preponderance of evidence [2] and that Long had sustained her burden of proving that Horwath abandoned, suppressed, or concealed the invention.

### Issue

The dispositive issue is whether the record sustains Long's burden or proving suppression or concealment by Horwath.

### OPINION

We agree with the board that Horwath reduced the invention to practice prior to November 17, 1969. Because we also agree with the board's conclusion respecting suppression or concealment, a discussion of the reduction to practice issue raised by Long on appeal is unnecessary.

Fact situations surrounding suppression or concealment issues require consideration on a case-by-case basis. *Young v. Dworkin*, 489 F.2d 1277 (CCPA 1974);

---

1. Long was one of the named coinventors on the Lee patent.

2. Long argued that Horwath must prove priority beyond a reasonable doubt because Horwath did not file until after publication of a Dutch application corresponding to the Lee application. The reasonable doubt standard applies when an interfering application is filed after issuance of a patent. *Silvestri v. Grant*, 496 F.2d 593 (CCPA 1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1126, 43 L.Ed.2d 399 (1975). The preponderance of evidence standard applies when, as here, an interfering application is copending with another application. *Kawai v. Metlesics*, 480 F.2d 880 (CCPA 1973); *Frilette v. Kimberlin, supra*.

*Myers v. Feigelman,* 455 F.2d 596, 59 CCPA 834 (1972). That mere delay will not establish suppression or concealment, and that proof of "spurring" is not essential to a finding of suppression or concealment, are guidelines set forth in *Young,* 489 F.2d at 1281.

Against the rule that mere delay will not alone establish suppression or concealment stands the linchpin of the patent system— early public disclosure—which is fostered by the § 102(g) codification of existing law:

> [B]y deliberate concealment or suppression of the knowledge of his invention [the inventor] * * * subordinates his claim, in accordance with the general policy of the law in the promotion of the public interest, to that of another and bona fide inventor who during the period of inaction and concealment shall have given the benefit of the discovery to the public. Viewed in the light of "the true policy and ends of the patent laws," the latter is the first to invent, and therefore entitled to the reward.

*Thomson v. Weston,* 19 App.D.C. 373, 1902 C.D. 521 (1902). See, also, *Mason v. Hepburn,* 13 App.D.C. 86, 1898 C.D. 510 (1898).

> The man who secretes his invention makes easier and plainer the path of no one. He contributes nothing to the public. Over and over it has been repeated that the object of the patent system is through protection to stimulate invention, and inventors ought to understand that this is for the public good. Where an invention is made and hidden away it might as well never have been made at all, at least so far as the public is concerned. The law owes nothing to such an inventor, and to permit him to lie in wait, so to speak, for one who independently and in good faith proceeds to make and disclose to the public the same invention would be both unjust and against the policy of the patent laws. In the eyes of the law he is not the prior inventor.

*Brown v. Campbell,* 41 App.D.C. 499, 501– 02, 1914 C.D. 170, 171–72 (1914).

When an inventor actually reduces to practice an invention, public policy dictates that if he would have the benefits of the patent system vis-a-vis rival independent inventors he must file his application for patent promptly. The longer he delays the greater are the equities that may be raised on behalf of one who made the same invention and promptly disclosed it in the Patent and Trademark Office. The theory is not forfeiture, estoppel, or other legal rule by which one is deprived of a property right; it is the simple rule that the property right shall reside in the second inventor who disclosed and not in the first inventor who concealed, i. e., the law prefers and will reward earlier disclosure over earlier invention. See Rich, J., concurring, in *Young v. Dworkin, supra.*

Before us, Horwath's principal argument is a response to the board's assertion that his patent application did not reflect improvements over an April, 1967 invention disclosure. Horwath directs our attention to four portions of his patent application[3] said to reflect such improvement.

The first portion is a list of eight preferred *Arthrobacter* species of which two were used in 1966. Though screening additional species may have started prior to 1971, the bulk of the work was performed during 1971. An unexplained five year delay in performing the additional screening is inconsistent with an intent to provide early public disclosure.

The second portion mentions cobalt salt as a source of metal ions for propagating the microorganism. Use of a source of metal ions is not, however, mentioned in any claims. More importantly, a cobalt salt was used in Horwath's 1966 research. The result of work done prior to actual reduction to practice cannot serve to explain a five year delay in disclosing that result.

The third portion is the general statement, "The glucose isomerase may also be bound to an inert carrier and used for the

---

**3.** Long argues that the additional material resulted from a flurry of activity after Horwath learned of the Dutch application corresponding to the Lee application, but, as indicated, "spurring" is not a necessary element of proof of suppression. *Young v. Dworkin, supra.*

isomerization." It is inconceivable that five years of research were required to support that statement.

The fourth portion is an example and table, reflecting glucose isomerizing activity of various *Arthrobacter* species and said to support the broad claims in Horwath's application. The record fails, however, to demonstrate or point out consistent Horwath efforts to develop the information in the example and table over the five year span preceding his filing date.

Horwath began the research leading to his invention in November, 1965, and reduced it to practice in five months. Factors necessitating a period of sixty-six months to refine and perfect the invention, if such factors existed, are simply not adequately supported in the record.

■ Horwath repeats here the argument made to the board that Long has not sustained her burden of proving suppression or concealment. The board correctly held that an unreasonable or excessive delay raised an inference of intent to suppress and shifted to Horwath the burden of explaining the delay. *Peeler v. Miller*, 535 F.2d 647, 655–56 (CCPA 1976) (Miller, J., concurring).

■ On that issue we adopt as our own the applicable portion of the board's unpublished opinion: [Footnotes re findings of fact omitted. Remaining footnotes renumbered. "18C" was a test sample designation used by Standard Brands. "G.I.E." refers to glucose-isomerizing enzyme.]

OPINION AND DECISION OF BOARD OF PATENT INTERFERENCES, NOVEMBER 30, 1976.

Gaston and Modance, Examiners of Interferences and McKelvey, Acting Examiner of Interferences.

McKelvey, Acting Examiner of Interferences.

\*      \*      \*      \*      \*      \*

We turn now to the second issue raised by Long: "suppression" or "concealment" of the invention by Horwath et al. Under the facts of this case, we hold that the evidence has raised at least an inference of suppression or concealment of the invention by the party Horwath et al. and their assignee, Standard Brands, Inc., which has not been rebutted. The conduct of Standard Brands, Inc., in bringing information concerning, and knowledge of, the invention ultimately to the public is relevant to a determination of "suppression" or "concealment."[4] Such conduct is imputable to Horwath et al. *Peeler v. Miller*, 535 F.2d 647 (CCPA 1976).

Shortly after the successful actual reduction to practice in April 1966, Chen and Mueller were transferred to another division of Standard Brands, Inc. where, according to the principal brief of Horwath et al., they conducted:

". . . further experiments to 'scale-up' operations and to ascertain the eventual commercial feasibility of '18C' as a source of G.I.E. which would be capable of efficiently and economically converting glucose to fructose. From then until the filing of the Horwath et al. patent application, work was conducted to ascertain and establish the commercial feasibility of '18C' *Arthrobacter* for this purpose."

Filing of the Horwath et al. patent application occurred December 13, 1971, some five and a half years after the successful actual reduction to practice. Where there is unreasonable delay between actual reduction to practice and the filing of a patent application, there is a basis for inferring an intent to suppress or conceal. *Peeler v. Miller, supra,* and cases cited therein. In our view, a nearly six-year delay from the time an inventor is satisfied with his invention to the time his assignee-employer files

---

4. In *Palmer v. Dudzik*, 481 F.2d 1377, 1387 (CCPA 1973), the Court stated:

    ". . . the question whether suppression or concealment under 35 U.S.C. 102(g) is negated ought to be determined by asking whether the public has gained *knowledge of* the invention which will *insure its preservation* in the public domain (Original emphasis)."

    The word "suppress" has included the idea of keeping from public knowledge. *Young v. Dworkin, supra.*

a patent application is prima facie unreasonable in an interference with a party who filed first. Compare *Peeler v. Miller, supra*; *Brokaw v. Vogel*, 429 F.2d 476, 57 CCPA 1296 (1970). That delay, coupled with the statements found in Ex-81,[5] is sufficient basis for inferring an intent to suppress or conceal.

The question remains whether Horwath et al. have adduced evidence of activities during the delay period to excuse, explain or justify the delay. *Peeler v. Miller, supra*; *Young v. Dworkin, supra*; *Frey v. Wagner*, 24 CCPA 823, 87 F.2d 212 (1937) ("The law does not punish an inventor for attempting to perfect his process before he gives it to the public"). In their reply brief and in a memorandum filed after oral hearing, Horwath et al. shift from the "commercial feasibility" description of the purpose of Standard Brands, Inc. activities during the period in question to one of "continued activities to refine, perfect or improve the invention." Horwath et al. draw our attention to Exhibits listed in the "Documentary Chronology of Horwath et al.," presented as an appendix to the briefs of both parties, as evidence of their activities.

We do not depreciate the work represented in those Exhibits. We note, however, that no witness testified that any specific refinements or improvements which seem to be delineated in those exhibits later were ultimately included in the Horwath et al. patent application, or that the ultimate patent application discloses much more than the April 1967 patent memorandum (Ex-11). Nor has counsel for Horwath et al. drawn our attention to any such specific activity during that period which is reflected in the Horwath et al. application and goes beyond the disclosure of Ex-11. Such refinements and improvements which were made to perfect the process, already actually reduced to practice by Horwath et al. in April 1966 and disclosed in Ex-11, would appear to remain suppressed or concealed, insofar as the application filed in December 1971 is concerned. The activities of Horwath et al. subsequent to April 1967 neither serve to excuse the delay nor to insure that the public has gained knowledge of the invention so as to guarantee its preservation in the public domain. Cf. *Pingree v. Hull*, 518 F.2d 624 (CCPA 1975).

It is true, of course, that various of the exhibits reflect an interest on the part of various personnel of Standard Brands, Inc. in patenting the process employing 18C. Indeed, Horwath had furnished patent counsel with a memorandum for preparing a patent application in April 1967 (Ex-11; Ex-136). But how was this interest implemented? Patent counsel's unanswered requests in 1967 and 1968 for information as to the status of the 18C project and for a more complete invention record are stark evidence of the apparent attitude of indifference, supineness or benign neglect which had attached to the Horwath et al. invention.[6] Only after Lee et al. had entered the

---

5. Finding of Fact 11, *supra*. [reprinted below]
    11. On April 8, 1966, a report was issued which states:
    "*Attached please find a copy of Dr. Pomper's reports dated February 28, March 4, March 18 and March 28, 1966. These reports should bring you up to date on the status of our work with the 18C organism. Your comments and suggestions will be appreciated.*
    *I mentioned to you over the telephone that it was our intention to keep this information restricted to only a very few key people in our Company. Consequently, I would appreciate it very much if you would not pass on the attached reports beyond Dr. MacAllister.*
    *As I see it, the main points to be resolved with 18C are:*
    \*   \*   \*   \*   \*   \*

b. *Taxonomic identification*: We will try a little more at Stamford, although I am not too hopeful of being able to do a good job (it is more a matter of luck, as we are not set up to do this kind of work). We may have to go to outside experts to identify 18C (if this is deemed a necessary FDA [U. S. Food & Drug Administration] requirement" (emphasis in original).

6. With respect to Ex-13, dated February 24, 1969, Pomper testified that he didn't "recall exactly what happened," as the result of that memorandum. * * * Horwath testified that no work was done by his group on 18C between April 10, 1967 and February 24, 1969, the dates of Ex-11 and Ex-13, respectively. [Findings of fact and Record citations omitted.]

field in November 1969 was further taxonomic work actually undertaken on 18C apparently for the purpose of filing a patent application. Only after Horwath et al. and other Standard Brands, Inc. personnel had learned on or about July 23, 1971 of the entry of Lee et al. into the field by virtue of the published Dutch patent application was further work immediately undertaken, apparently by Chen to obtain and screen other *Arthrobacter* cultures for G.I.E. activity,[7] the results of which appear in the Horwath et al. application filed in December 1971 and do exceed the memorandum disclosure of Ex-11.

There is no direct evidence that Horwath et al. (or Standard Brands, Inc.) was spurred into filing their application upon learning on or about July 23, 1971 of the Lee et al. published Dutch patent application. We believe, however, it is reasonable to infer from the record here that it was such knowledge of the published Dutch application that led Horwath et al./Standard Brands, Inc. to file their application when they finally did, *Brokaw v. Vogel, supra,* although spurring is not an "essential element" of proving suppression or concealment, *Young v. Dworkin, supra* ; *Peeler v. Miller, supra.*

We conclude in light of the record that Horwath et al./Standard Brands, Inc. have not come forward with sufficient evidence to overcome the prima facie case of suppression or concealment made out by Long.[8] It follows that Horwath et al. have lost their right to rely on their April 1966 actual reduction to practice, and that Long is entitled to an award of priority.

In sum, we agree with the board that the delay in this case was excessive, unreasonable, and inadequately explained; that,

within the meaning of § 102(g), Horwath suppressed or concealed the invention; and that, as between Horwath and Long, the greater right to a patent resides in Long.

The decision of the board is *affirmed.*

AFFIRMED.

---

7. Inasmuch as Chen screened 14 *Arthrobacter* cultures for G.I.E. activity within one month after Horwath and other Standard Brands personnel learned of the published Dutch application of Lee et al., quite consistent with the man hours estimated by Horwath, it is appropriate to wonder why more screening along those lines was not done earlier in follow-up of the recommendation of D'Andrea on April 21, 1966. Various *Arthrobacter* cultures were apparently available either from Standard Brands, Inc. collections or from recognized depositories at that time. [Findings of fact and record citations omitted.]

8. On the other hand, the evidence is sufficient to negate Long's argument that Horwath et al. had abandoned the invention. See *Silvestri v. Grant,* 496 F.2d 593 (CCPA 1974).