Joseph John SHINDELAR, Appellant,

v.

Adin Frank HOLDEMAN, Melvin Victor Gaeddert, Howard James Ratzlaff, Martin Eugene Pruitt and Howard Roy Lohrentz, Appellees.

Patent Appeal No. 80–522.

United States Court of Customs and Patent Appeals.

Sept. 4, 1980.

Rehearing Denied Nov. 20, 1980.

Robert S. Swecker, Alexandria, Va., for appellant; John M. Nolan, Richmond, Va., of counsel.

Stephen D. Timmons and Gordon D. Schmidt, Kansas City, Mo., for appellees; William T. Bullinger, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and RE, Chief Judge.[*]

* The Honorable Edward D. Re, United States Customs Court, sitting by designation.

1. Application Serial No. 584,870, filed June 9, 1975, entitled "Method and Apparatus for Making Large Round Crop Bales," assigned to Hesston Corporation, a Kansas corporation.

2. Application Serial No. 585,851, filed June 11, 1975, entitled "Machine for Rolling Hay into Cylindrical Bales," assigned to Deere & Company (Deere), an Illinois corporation.

BALDWIN, Judge.

This is an appeal from the decision of the United States Patent and Trademark Office (PTO) Board of Patent Interferences (board) which awarded priority of invention of the count in issue to the senior party–applicants Holdeman et al.[1] based on its holding that, while the junior party–applicant Shindelar[2] had actually reduced the invention of the count to practice prior to the earliest date proven by Holdeman et al., Shindelar had suppressed or concealed the invention within the meaning of 35 U.S.C. § 102(g)[3] and, therefore, lost the right to a patent as against Holdeman et al. We affirm.

## Background

### The Invention

The invention in interference relates to a hay baler wherein hay is first rolled along the ground adjacent to a rear conveyor to start the bale. After the bale reaches a certain diameter, it engages a front conveyor so that the bale is elevated between the front and rear conveyors into a chamber off the ground. Within the chamber, hay is continuously fed to the periphery of the rotating bale until the cylindrical bale reaches the desired size, at which time the bale can be discharged out the rear of the baler.

The sole count[4] is as follows:

A machine for removing crop material from the ground and rolling it into large cylindrical bales comprising; [sic] a mobile frame having opposite sides and a shiftable rear gate structure; a rear conveyor means including a first axially transverse rotary element extending be-

3. According to 35 U.S.C. § 102(g), an applicant is not entitled to a patent on his invention if "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it."

4. The single count was claim 1 in Shindelar's application and, at the suggestion of the examiner, added to Holdeman et al.'s application as claim 24 for the purpose of interference.

tween the opposite sides adjacent the ground; crop pickup means operatively associated with said rotary element, for engaging crop material on the ground; drive means drivingly connected to the rear conveyor means and the crop pickup means so that the pickup means raises the crop material from the ground as the machine advances and the pickup means and rear conveyor means initially roll the crop material along the ground into a spiral cylindrical bale in advance of the pickup means; a second axially transverse rotary element extending between the opposite sides forwardly of the first rotary element and adapted to engage the forward side of the bale when the bale reaches a predetermined size, whereupon the rear conveyor means raises the bale from the ground so that it is at least partially supported above the ground on the first and second rotary elements while it continues to rotate and increase in size as the machine continues to advance and the pickup means feeds additional crop material thereto, said first rotary element and the crop pickup means being mounted on the rear gate structure and shiftable therewith from a lower operating position, wherein the pickup means is adapted to engage the crop material on the ground, and an upward and rearward discharge position, wherein the first rotary element and pickup means clear a formed bale to permit the rearward discharge of the bale from the machine.

*Proceedings Below*

As noted above, Holdeman et al. filed their application on June 9, 1975. Two days later on June 11, 1975, Shindelar filed his application. Subsequently, this interference was declared.

Shindelar filed an evidentiary record with the board for the purpose of overcoming Holdeman et al.'s earlier filing date, while Holdeman et al. elected to rely solely on their filing date for priority.

Shindelar's evidentiary record concerned his conception and the reduction to practice

of the invention of the count and the handling of the invention disclosure and filing of Shindelar's application in the two years and five month period between reduction to practice and filing of the application with the PTO. The record included the depositions of Shindelar and various personnel of Deere including one of Deere's patent department attorneys; and also included various exhibits.

*Facts Concerning Conception and Reduction to Practice*

Shindelar conceived the invention of the count in the fall of 1972, after which he discussed the concept with Deere's project engineer in the baler division. A "line sketch" and subsequent layout drawing of the concept were prepared by November 17, 1972. Deere built the subject hay baler by January 12, 1973, in Iowa and shipped it to Florida for testing which began on January 24, 1973. The testing of the baler was successful. Therefore, the invention of the count was actually reduced to practice by Deere on behalf of Shindelar in January of 1973.

*Facts Concerning Alleged Suppression or Concealment*

On January 17, 1973, after Deere built the subject hay baler, a patent disclosure of the invention signed by Shindelar was forwarded to the patent attorney in Deere's patent department responsible for preparation of the Shindelar application. Upon receipt of the invention disclosure, the patent attorney docketed it in accordance with Deere's standard practice.

Normally, the patent attorney took the cases up for application preparation in the order in which they were received except where potential statutory bars required earlier filing.

After receiving the disclosure, the patent attorney visited Shindelar and discussed the matter with him on one occasion. Then a prior art patent search was conducted at Deere's patent library by a Deere draftsman in January of 1974, and a written report was made to the patent attorney on January 25, 1974. Subsequently, the attor-

ney prepared the application which was filed on June 11, 1975, approximately two years and five months after his receipt of the invention disclosure.

During the two year and five month interim, the patent attorney was involved in his patent prosecution docket and in several patent litigation matters which required a considerable amount of his time away from the prosecution docket.

While there was intent to file the application by both Shindelar and the patent attorney, the application filing was delayed by the patent attorney's workload. During the two year and five month delay period, there were no patent or commercial activities known by Shindelar or his attorney to spur them to proceed with the application preparation and filing.

*Board*

The parties to the interference raised the following issues before the board:

1) Did Shindelar conceive the invention of the count in the fall of 1972?

2) Did Shindelar actually reduce the invention to practice in January of 1973?

3) If so, did Shindelar suppress or conceal the invention within the meaning of 35 U.S.C. § 102(g) and, therefore, lose his right to a patent as against Holdeman et al.?

After both parties had submitted briefs and presented oral argument at the final hearing, the board found that, by corroborated and uncontradicted testimony of Shindelar and his witnesses, the invention of the count was conceived by Shindelar in the fall of 1972 and was actually reduced to practice by Deere on behalf of Shindelar in January of 1973, which is prior to the earliest date proven by Holdeman et al. However, the board denied an award of priority to Shindelar by finding the two year and five month period between the reduction to

practice and the filing of his application "to be, prima facie, an 'unreasonable' period which has not been overcome by the mere showing that the workload of [the patent attorney] * * * prevented him from filing the application earlier." Therefore, the board held that Shindelar had suppressed or concealed the invention within the meaning of 35 U.S.C. § 102(g) [5] and awarded priority of invention to Holdeman et al.

## OPINION

On appeal, Shindelar contests the board's holding that he suppressed or concealed the invention within the meaning of 35 U.S.C. § 102(g). Holdeman et al., of course, argue that the § 102(g) finding is proper. Additionally, they argue that the board erred in holding that Shindelar had actually reduced to practice the invention of the count.[6] Thus there are two issues before this court: 1) Did the board correctly hold that Shindelar reduced to practice the invention of the count in January of 1973? 2) Did the board correctly hold that Shindelar suppressed or concealed his invention within the meaning of 35 U.S.C. § 102(g)?

*Reduction to Practice*

Shindelar, as junior party whose application is co-pending with that of Holdeman et al., bears the burden of proof regarding reduction to practice by a "preponderance of the evidence," as the board properly stated. *Horwath v. Lee*, 564 F.2d 948, 949 n.2, 195 USPQ 701, 703 n.2 (CCPA 1977).

The record before us supports the board's holding that Shindelar's invention was reduced to practice in January of 1973. On that issue, the decision of the board is affirmed.

---

**5.** The board supported its finding of prima facie unreasonableness by citing Judge Rich's concurring opinion in *Young v. Dworkin*, 489 F.2d 1277, 180 USPQ 388 (CCPA 1974).

**6.** While Holdeman et al. filed no cross–appeal, the reduction to practice issue is properly be-

fore us. A winning interference party is not required to cross–appeal with respect to issues raised by him before the board and decided adversely to him. *Clauss v. Foulke*, 54 CCPA 1514, 379 F.2d 586, 154 USPQ 85 (1967).

*Suppression or Concealment*

Fact situations surrounding a suppression or concealment issue must be considered on a case–by–case basis. *Horwath v. Lee*, supra; *Young v. Dworkin*, supra note 5.

Under the facts of this case, which are simple, undisputed and based on a very short record, and in light of the public policy inherent in 35 U.S.C. § 102(g),[7] we hold that the evidence has raised an inference of suppression of the invention by Shindelar's assignee (Deere)[8] which has not been rebutted.

As this court has stated repeatedly, though there is no law requiring an inventor to apply for a patent or to apply within any particular time, "one who delays filing his application does so at the peril of a finding of suppression or concealment due to the circumstances surrounding the delay." See, for example, *Young v. Dworkin*, 489 F.2d at 1281, 180 USPQ at 391, and cases cited therein.

As is stated in *Peeler v. Miller*, supra note 8:

A delay [between reduction to practice and filing of an application] may be of no legal consequence [under § 102(g)] because it is not long enough. Or the delay may be excused by activities of the inventor or his assignee during the delay period. * * * There may be other factors. But * * * the unreasonable length of a delay *may* [emphasis in original] be ample circumstance *in itself* [emphasis added] to find suppression. [535 F.2d at 655, 190 USPQ at 123.]

Thus, in interference situations involving another party who was first to file an application with the PTO, suppression or concealment may be found when one is not disclosing or acting to disclose the invention to the public or to the PTO in a patent application where the failure to disclose is unexcused.

In the present case, Shindelar assigned the rights to his invention and patent application to Deere. After the baler had been actually reduced to practice, Shindelar forwarded an invention disclosure to a patent attorney in Deere's patent department. Upon receipt of the disclosure, the patent attorney docketed it in accordance with Deere's standard practice. Two years and five months later, on June 11, 1975, the application was filed with the PTO.

In an effort to excuse the long delay period, Shindelar introduced evidence that the patent attorney discussed the invention with Shindelar on one occasion; that the attorney then had a Deere draftsman conduct a prior art patent search in Deere's patent library after which a written search report was made to the patent attorney on January 25, 1974, approximately one and a half years before the application was filed; that the application filing was delayed by the patent attorney's heavy workload; and that neither Shindelar nor Deere were spurred into filing the application. Evidence was also introduced that, throughout the delay period, there was always an intent to file the patent application both by the inventor and by the patent attorney.

---

7. Speaking for a unanimous court in *Horwath v. Lee*, Chief Judge Markey noted that "the linchpin of the patent system–early public disclosure– * * * is fostered by the § 102(g) codification of existing law" (564 F.2d at 950, 195 USPQ at 703) and went on to state:

When an inventor actually reduces to practice an invention, *public policy dictates* that if he would have the benefits of the patent system vis–a–vis rival independent inventors *he must file* his application for patent *promptly* * * *. The theory is not forfeiture, estoppel, or other legal rule by which one is deprived of a property right; it is the simple rule that the property right shall reside in the second inventor who disclosed and not in the first inventor who concealed, i. e., the law prefers and will reward earlier disclosure over earlier invention. See Rich, J., concurring in *Young v. Dworkin*, supra. [564 F.2d at 950, 195 USPQ at 704. Emphasis added.]

8. Deere's dilatory conduct here is imputable to Shindelar. *Peeler v. Miller*, 535 F.2d 647, 190 USPQ 117 (CCPA 1976); *Wilson v. Goldmark*, 36 CCPA 849, 172 F.2d 575, 80 USPQ 508 (1949).

In our opinion, the two year and five month delay from the time the invention was actually reduced to practice and an invention disclosure received by Deere's patent attorney and the time Deere filed the patent application is unreasonably long in an interference with a party who filed first.

Looking at the facts, it cannot be said that Shindelar has sufficiently excused the delay. One discussion with the inventor, an order to a draftsman to search the patent files, and the preparation of a search report could possibly account only for a few days. In many circumstances, one month would be ample allowance to a patent attorney to draft the application. Another month could be ample for a draftsman to prepare the drawings. To be generous, perhaps another month could be allowed to have the application placed in final form, executed by the inventor and filed with the PTO. Thus a period of approximately three months could possibly be excused during the twenty–nine month delay in which any meaningful, time–consuming acts toward application filing took place. However, more than two years of the delay period remains unaccounted for. Apparently, due to the patent attorney's workload, the Shindelar application matter merely lay dormant in Deere's patent department for at least two years.

The patent attorney's workload will not preclude a holding of an unreasonable delay. Nor will the showing of intent to file–someday–negative a holding of suppression. *Peeler v. Miller*, supra note 8.

Additionally, the showing of absence of spurring into filing the Shindelar application does not negative a holding of suppression nor excuse the delay.[9]

We are persuaded that there is no reasonable basis on which to differentiate this case from *Peeler v. Miller*, and the same result is therefore compelled, i. e., a holding of suppression as a matter of law. In that case the board (one member dissenting)

stated that Miller had not suppressed his invention, and we reversed. Miller's invention and application were assigned to the Monsanto Company which had a patent department. There was no specific intent to suppress or conceal the invention; however, four years elapsed between Miller's submission of an invention disclosure to the patent department, which classified it "A (Ready [to file])", and the application filing. Three attorneys left the patent department, but before they had gone and a new patent attorney arrived, two and a half years had elapsed. Miller presented no evidence covering that period. The new patent attorney, after being assigned a heavy docket, eventually prepared and filed the application some fifteen months after his arrival. We found the delay period unreasonable, not excused, and that Miller had, therefore, suppressed his invention. In both *Peeler* and this appeal, the patent attorney responsible for filing the application was an employee under the direct control of the inventor's assignee and was not an independent contractor. *Peeler v. Miller*, supra note 8, 535 F.2d at 654, 190 USPQ at 123. As a result, the delay in filing in *Peeler* and here was directly occasioned by the real party in interest.

Citing *Peeler v. Miller* to support the position that an attorney's workload will not preclude a holding of an unreasonable delay, and *Young v. Dworkin* to support the position that a delay period as little as two years is prima facie unreasonable, the board concluded:

[I]n the present case we find the two year and five month period between Shindelar's reduction to practice and the filing of his application to be, prima facie, an "unreasonable" period which has not been overcome by the mere showing that the workload of [the patent attorney] * * prevented him from filing the application earlier. Accordingly, we find that

---

**9.** While spurring into filing an application for patent by knowledge of another's entry into the field (e. g., by commercial activity or by issuance of a patent) is not essential for a finding

of suppression, *Young v. Dworkin*, that is not to say that the presence or absence of spurring is not relevant to the issue of suppression or concealment.

Shindelar suppressed or concealed the invention within the meaning of 35 U.S.C. § 102(g) and therefore has lost his right to a patent as against Holdeman et al.

We agree with the board's conclusion; however, we caution that any attempt to establish a rule that a certain specified length of time is per se unreasonable is contrary to the previous holdings of this court. We reiterate that each case involving the issue of suppression or concealment must be considered on its own particular set of facts.

The decision of the board awarding priority to Holdeman et al. is *affirmed.*

*AFFIRMED.*