**SIEMENS AKTIENGESELLSCHAFT,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 416–89C.**

United States Claims Court.

Aug. 14, 1992.

See also 26 Cl.Ct. 312.

Steven H. Noll, Chicago, Ill., with whom were David R. Metzger and John D. Simpson, for plaintiff. Jeffrey P. Morris, Iselin, New Jersey, of counsel.

Robert G. Hilton, Washington, D.C., with whom were Vito J. DiPietro, Director, Commercial Litigation Branch, and Stuart M. Gerson, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant. John J. Fargo, Washington, D.C., of counsel.

## OPINION

SMITH, Chief Judge.

This matter is before the court on plaintiff's motion for partial summary judgment. Plaintiff filed this action pursuant to 28 U.S.C. § 1498 (1988)[1], to recover reasonable compensation for the government's alleged use of the subject matter claimed in plaintiff's patent. Defendant argues that plaintiff's patent is invalid under 35 U.S.C. § 102 because the government's contractor produced similar technology and made it available for sale more than one year before plaintiff filed its patent application. Upon full consideration of the parties' briefs, oral arguments and supporting documentation, the court grants plaintiff's motion for partial summary judgment on the

defenses asserted by defendant under sections 102(b) and (g).

## BACKGROUND

Plaintiff, Siemens Aktiengesellschaft ("Siemens") is the owner by assignment from Dr. Richard Hechtel of United States Patent No. 3,859,552 (the "Hechtel patent"), which was applied for on February 12, 1973 and issued on January 7, 1975. The Hechtel patent concerns "electron beam generators for transit-time electron discharge tubes", less cumbersomely known as "traveling wave tubes". The primary purpose of these traveling wave tubes is in the operation of airborne radar, particularly in military aircraft. The tubes have an electron gun with a cathode for the emission of an electron beam, and a control grid through which the beam travels. Claim 1 of the Hechtel patent involves the use of an annular grid as a control grid; Claim 2 concerns the use of a control grid comprised of an annular grid within which is a circular grid.[2]

Hughes Aircraft Company ("Hughes") is the owner by assignment from Messrs. James A. Noland and Ronald A. Forbess of United States Patent No. 3,903,450, which was applied for on February 21, 1973. The "Hughes patent" concerns an electron gun which can be used in traveling wave tubes with an annular control grid. Mr. Noland conceived of using an annular grid in an electron gun ("the Noland gun") in August, 1969, and reduced this idea to practice in October, 1970. Hughes then submitted research and development proposals to the United States Navy and Air Force, and several private institutions.[3] The proposals

---

1. In its complaint, plaintiff also asserts jurisdiction under 35 U.S.C. §§ 271 and 281. However, compensation for government use or manufacture of an invention described in the claims of a United States Patent is authorized by 28 U.S.C. § 1498(a), whereas Title 35 is reserved for patent infringement actions against private parties. Accordingly, the court will treat this action as one brought solely pursuant to 28 U.S.C. § 1498.

2. The Hechtel patent is comprised of seven claims, the first two of which defendant asserts are invalid. As explained below, plaintiff directs its motion for summary judgment only to the government's defenses concerning Claim 1.

3. After October, 1970, Hughes submitted proposals to the following institutions:

| | |
|---|---|
| 12/70 | Cornell Aeronautical Laboratory, Inc. |
| 12/70 | Rome Air Development Center |
| 2/71 | Department of the Navy, Office of Naval Research |
| 12/71 | Department of the Navy, Office of Naval Research |
| 12/71 | General Electric |
| 12/71 | Raytheon |
| 3/72 | Philco–Ford |
| 3/72 | Raytheon |
| 10/72 | Wright–Patterson Air Force Base, Air Force Systems Command |
| 1/73 | Hallicrafters |

Hughes submitted to the United States Department of the Navy were classified as "SECRET" and the other proposals were confidential.[4] Based upon these proposals, the government awarded Navy Contract N00014–72–0–0205 ("the '0205 contract") to Hughes on January 15, 1972. Despite these proposals and the Navy contract, Messrs. Noland and Forbess filed a declaration, along with their patent application, that no sale or publication of the Noland gun occurred more than one year prior to their patent application.

On May 14, 1986, plaintiff filed an administrative claim, based upon Siemens' rights under the Hechtel patent, with the patent division of the United States Air Force, Office of the Judge Advocate General. According to plaintiff, the administrative proceedings failed due to Hughes' refusal to acknowledge any duty to indemnify the government for infringement of the Hechtel patent. On August 1, 1989, plaintiff filed its complaint in this court. Siemens alleges that defendant has had Litton Systems, Inc. and Hughes manufacture transit-time electron discharge devices for the Aeronautical Systems Division of the Air Force, in violation of plaintiff's patent. Defendant's answer raises the affirmative defense of prior patent invalidity under 35 U.S.C. § 102.[5] The government argues that Claim 1 of the Hechtel patent is invalid because the Noland gun was invented before the Hechtel device and was placed on sale more than one year prior to plaintiff's patent application.[6] Siemens moves for partial summary judgment on these section 102 defenses.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. RUSCC 56(c) (1991). In evaluating a motion for summary judgment, any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Electric Industri-*

---

3/73 Rome Air Development Center Plaintiff's exhibits K–P.

4. Mr. Forbess testified at his deposition that the proposals did not constitute a disclosure of his invention because "customers consider this proprietary information, so it wouldn't have gone beyond them." Forbess Deposition at 69. The government admits that confidentiality was expected at least prior to contract award.

5. Section 102 provides, in pertinent part:
   **§ 102. Conditions for patentability; novelty and loss of right to patent**
   A person shall be entitled to a patent unless—
   \* \* \* \* \* \*
   (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or
   \* \* \* \* \* \*
   (g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed,

or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

6. In its answer, the government also contended that Claim 2 of the Hechtel patent is invalid because it is "obvious" under 35 U.S.C. § 103, due to the Hughes invention and the subject matter of Hughes sales activity concerning that device. However, plaintiff's motion for partial summary judgment is directed solely to Claim 1 of the Hechtel patent.

*al Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

■ Plaintiff's motion for summary judgment is directed solely to the government's defense of invalidity of Claim 1 of the Hechtel patent. Under 35 U.S.C. § 282, a patent is presumed valid and the contesting party has the burden of establishing invalidity of the patent by clear and convincing evidence. *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1050 (Fed.Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). Defendant makes two arguments under 35 U.S.C. § 102 to support its claim that plaintiff's patent is invalid: First, that the Noland gun was conceived and reduced to practice before the Hechtel device and was not suppressed or concealed within the meaning of section 102(g). Second, defendant argues that the Noland gun was on sale within the meaning of section 102(b), more than one year before plaintiff's patent application. Both of the government's defenses under 35 U.S.C. § 102 are questions of law. *See Brokaw v. Vogel*, 429 F.2d 476, 480 (C.C.P.A.1970) ("whether there was suppression [or] concealment under the statute is an ultimate conclusion of law"); *UMC Electronics Co. v. United States*, 816 F.2d 647, 657 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988) ("the issue of whether an invention is on sale is a question of law"). Thus, the court can properly render summary judgment as to these issues if there are no underlying factual disputes.

## I. SUPPRESSION OR CONCEALMENT OF THE NOLAND GUN

■ As a general matter, the party who establishes that it is the first to conceive of an invention and reduce it to practice is entitled to a patent on that invention. *Lutzker v. Plet*, 843 F.2d 1364, 1366 (Fed. Cir.1988). For the purposes of its motion, plaintiff accepts defendant's contentions that the Noland gun was conceived and reduced to practice prior to the Hechtel invention. However, Siemens will be awarded priority of invention if it can show that Hughes "abandoned, suppressed or concealed" the Noland invention. 35 U.S.C. § 102(g). In order to do this, plaintiff must make a *prima facie* case of suppression or concealment with evidence that Hughes unreasonably delayed the filing of its patent application following the reduction to practice of the Noland gun. Once established, defendant may rebut this *prima facie* case with a showing that Hughes resumed activity on the Noland gun during the period of delay, or took steps to publicly disclose the invention. If defendant does this, summary judgment for plaintiff must be denied.

### A. Unreasonable Delay

■ Siemens contends that the 27 month gap between the reduction to practice of the Noland gun and the Hughes patent application was unreasonable and constitutes suppression and concealment under section 102(g).[7] Whether an invention was suppressed or concealed must be decided on a case-by-case basis. *Young v. Dworkin*, 489 F.2d 1277, 1280 (C.C.P.A.1974). In making this determination, the court must balance the rule that mere lapse of time is insufficient to show suppression or concealment with the public policy favoring early public disclosure of inventions. *Horwath v. Lee*, 564 F.2d 948, 950 (C.C.P.A.1977). Thus, although there is no requirement that an inventor apply for a patent at a particular time, "one who delays filing his application does so at the peril of a finding

---

**7.** Plaintiff also argues that the 38 month delay between conception of the Noland gun and the Hughes patent application was unreasonable and amounted to suppression and concealment. However, none of the suppression or concealment cases from the United States Court of Appeals for the Federal Circuit and its predeces-

sors subject the period between conception and patent application to the unreasonable delay inquiry. *See, e.g., Paulik v. Rizkalla*, 760 F.2d 1270, 1274–75, and cases discussed therein. Therefore, the court will not consider the 38 month delay in its discussion.

of suppression or concealment due to the circumstances surrounding the delay." *Shindelar v. Holdeman*, 628 F.2d 1337, 1341 (C.C.P.A.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981).

■ "[W]hen there is an unreasonable delay between the actual reduction to practice and the filing of a patent application, there is a basis for inferring abandonment, suppression or concealment." *Lutzker*, 843 F.2d at 1367 (citing *Horwath v. Lee*, 564 F.2d at 951–52). This inference may be overcome with evidence that the inventor worked during the period of delay to improve or perfect the invention. However, such improvements must be reflected in the final patent application. *Lutzker*, 843 F.2d at 1367. A delay between reduction to practice and the patent application may also be excused if the inventor resumes activity on the invention prior to the application. *Paulik v. Rizkalla*, 760 F.2d 1270, 1272 (Fed.Cir.1985). In other words, Siemens must show that Hughes waited too long to disclose its invention and that this delay was not the result of continued or resumed work on the Noland gun.

■ In the instant case, the court finds that plaintiff has raised an inference of suppression and concealment with evidence of the 27 month delay between reduction to practice of the Noland gun and Hughes' patent application. Courts have found delays ranging from 29 to 51 months *prima facie* unreasonable absent a showing of improvement or resumed activity on the subject invention. *See Lutzker*, 843 F.2d at 1367 (delay of approximately 51 months found to be unreasonably long and sufficient to give rise to an inference of intent to abandon, suppress or conceal); *Paulik*, 760 F.2d at 1273–75 (four year delay constitutes *prima facie* suppression); *Shindelar v. Holdeman*, 628 F.2d at 1342–43 (29 months *prima facie* unreasonable delay.)

To rebut plaintiff's *prima facie* showing, defendant argues that Hughes resumed activity on the Noland gun when it entered the Navy '0205 contract on January 15, 1972, prior to plaintiff's entry into the field. However, the government's contention is simply not supported by the caselaw. In *Paulik*, the first inventor waited four years to file its patent application but prepared drafts for the application and conducted additional laboratory experiments during that time. The Federal Circuit held that "[t]here is no impediment in the law to holding that a long period of inactivity need not be a fatal forfeiture, if the first inventor resumes work on the invention before the second inventor enters the field." 760 F.2d at 1272. Here, there is no assertion that Hughes' contract with the Navy was in furtherance of refining its patent application or perfecting the Noland gun. Moreover, defendant has not shown that any activities relating to the '0205 contract were more than mere "commercialization" of the Noland gun invention. *See Lutzker*, 843 F.2d at 1367 (delay caused by commercialization activities will not be excused). As such, Hughes' contract does not excuse its delay in filing its patent application. As defendant has failed to rebut plaintiff's *prima facie* case with evidence of resumed activity, the legal inference of suppression or concealment cannot be overcome unless defendant can show that the Noland gun was somehow made public.

### B. Public Disclosure

The government makes three additional arguments to rebut plaintiff's *prima facie* case of suppression or concealment. First, defendant contends that causing disclosure of the invention in a public document negates any claim of suppression or concealment. The government asserts that a description of the Noland gun was in an unclassified section of the proposals and thus was subject to public release pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1977). Second, defendant argues that the only known use of the invention was military-related. Consequently, the government contends, Hughes' attempts to sell the invention to the Navy represents the very antithesis of suppression or concealment. Finally, defendant argues that those skilled in the intricacies of FOIA could have obtained the Noland gun design following the award of Navy Contract '0205. Thus, although the

proposals and documents exchanged by Hughes and the government were not publications, defendant argues that they were public documents.

■■■ Public disclosure of an invention is one of the core policies of American patent law. *See, e.g. Horwath v. Lee,* 564 F.2d at 950 ("the linchpin of the patent system [is] early public disclosure ..."). As the Federal Circuit explained in *Lutzker,*

> [t]he courts have consistently held that an invention, though completed, is deemed abandoned, suppressed, or concealed if, within a reasonable time after completion, no steps are taken to make the invention publicly known. Thus, failure to file a patent application; to describe the invention in a publicly disseminated document; *or to use the invention publicly,* have been held to constitute abandonment, suppression or concealment.

843 F.2d at 1366 (quoting *Correge v. Murphy,* 705 F.2d 1326, 1330 (Fed.Cir.1983)). Hughes filed its patent application after Siemens and did not conduct any public demonstrations of the Noland gun. Thus, the government must show that the proposals and Navy Contract '0205 were "publicly disseminated document[s]" within the meaning of Federal Circuit precedent.

As an initial matter, defendant accurately asserts that the "SECRET" classification on the Navy proposals does not establish *per se* suppression or concealment. In *Del Mar Engineering Laboratories v. United States,* 207 Ct.Cl. 815, 524 F.2d 1178 (1975), the court held that a security classification is merely one fact to consider in determining whether an invention was suppressed or concealed. Unless plaintiff can show that defendant attempted to exclude the invention from the public through its security system, the "Secret" classification on the Navy proposal is insufficient evidence in itself of suppression or concealment. *Id.* 524 F.2d at 1185.

Plaintiff, however, contends that through a deliberate and complicated classification system, the Noland gun was excluded from the public. The cover page of the proposal Hughes made to the Navy which ultimately resulted in the '0205 contract contains two "SECRET" stamps, two "CONFIDENTIAL" stamps, a "SECRET" classification, a "NATIONAL SECURITY INFORMATION" stamp, and the following warnings:

> This document contains information affecting the national defense of the United States, within the meaning of the Espionage Laws, Title 18, U.S.C., Sections 793 and 794, the transmission or revelation of which in any manner to an unauthorized person is prohibited by law.

> \*   \*   \*   \*   \*   \*

> This data shall not be disclosed outside the government and shall not be duplicated, used or disclosed in whole or in part for any purpose other than to evaluate the proposal; provided that if a contract is awarded to this offeror as a result of or in connection with the submission of this data, the government shall have a right to duplicate, use or disclose the data to the extent provided in the contract ... The data subject to this restriction is contained in sheets IV–6 through IV–7.[8]

Pages IV–6 through IV–7 contain the description of the Noland gun. Although these pages are stamped "UNCLASSIFIED", they carry the notice that "USE OR DISCLOSURE OF PROPOSAL DATA IS SUBJECT TO RESTRICTION ON THE TITLE PAGE OF THIS PROPOSAL." The court finds it difficult to argue with plaintiff's assertion that, taken as a whole, these warnings were sufficient to exclude the Noland gun from the public. Nor does the "UNCLASSIFIED" stamp on the invention description pages necessarily prove otherwise. Just as a security classification is not *per se* suppression or concealment, an unclassified label is not *per se* public disclosure.[9]

---

8. Plaintiff's exhibit O, at 1.

9. Nor does defendant's reliance on *FTC v. Owens Corning Fiberglas,* 626 F.2d 966 (D.C.Cir.

1980), refute this conclusion. In that case, the court simply reiterated the rule that governmental agencies must release information which is not confidential trade secret information. *Id.* at

The government acknowledges that the Hughes Navy proposals were not publications. *See Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936 (Fed. Cir.1990) (In order for a document to serve as a printed publication, it must be generally available). However, defendant contends that the unclassified description of the Noland gun were public documents subject to release under FOIA. The government cites no authority for the proposition that simply being available for potential FOIA release is equivalent to public disclosure. The public dissemination necessary to rebut an inference of suppression or concealment under *Paulik* and *Lutzker* clearly requires some affirmative action on the part of the inventor. "As implemented by the patent statute, the grant of the right to exclude carries the obligation to disclose the workings of the invention, thereby adding to the store of knowledge without diminishing the patent-supported incentive to innovate." *Paulik*, 760 F.2d at 1276. In order to add to the current body of science, it follows that the public must know that the information is there. The potential for fortuitous discovery of information is not the principle embraced by *Paulik* and *Lutzker*, or the patent system.

The second argument the government advances to rebut plaintiff's *prima facie* case of suppression or concealment is that the only uses of the Noland gun were military-related. Therefore, defendant asserts that the government *was* the relevant public to whom the invention had to be disclosed. Thus, defendant argues that the sale of the Noland gun to the Navy under the '0205 contract constitutes public dissemination. However, the government also fails to cite any support for this contention. There is nothing in the caselaw to suggest that the government is considered to be the public for disclosure purposes where the invention is military related. One can easily imagine many people who would be interested in the development of the Noland gun, such as potential government contractors or those interested in research on applications of the device.[10] The court would also note that the history of science shows that inventions have never been confined to predictable uses. Note the development of airplanes, submarines, satellites, nuclear energy, lasers or radar, to name just a few. Hence, the court declines to accept defendant's apparent argument for a modified public disclosure standard.

Finally, defendant asserts that the Noland gun was not suppressed or concealed from the public because it had the right under the '0205 contract to freely disseminate information regarding the device and because people with the requisite skill could obtain the information under FOIA. This argument again fails to show that the Noland gun was thereby made available to the public. In the absence of such a showing, the court cannot find that the Noland gun was publicly disclosed. Accordingly, the court holds that the Noland gun was suppressed or concealed and, therefore, cannot serve as a basis for invalidating Claim 1 of the Hechtel patent under section 102(g).

## II. SALE OR OFFER OF SALE OF THE NOLAND GUN

Siemens also seeks summary judgment on the government's section 102(b) defense of invalidity of the Hechtel patent. Under section 102(b), a person is entitled to a patent unless one year prior to his patent application, "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country...." *Id.*[11]

971. In the instant case, assuming that the unclassified data concerning the Noland gun was not "confidential", it was nonetheless subject to restriction as national security information. Under 5 U.S.C. § 552(b)(1), the military is empowered to deny release of such information.

10. The court notes that Hughes also submitted Noland gun proposals to private institutions.

However, the court accepts for the purposes of this motion that the Noland gun was for military use.

11. Plaintiff filed its patent application in the Federal Republic of Germany on March 2, 1972. However, for the purposes of its motion, Siemens accepts defendant's contention that the earliest date to which the Hechtel patent claims

Unlike the suppression or concealment issue, the government must make the *prima facie* case under section 102(b). In order to establish a *prima facie* case for the application of the section 102(b) on-sale defense, the challenger has the burden of proving that there was a definite sale or offer to sell more than one year before the patent application. In addition, the challenger must show that "the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." *UMC Electronics Co. v. United States*, 816 F.2d 647, 656 (Fed.Cir.1987).[12] If the challenger establishes a *prima facie* case, the patent owner must then come forward with an explanation of the circumstances surrounding what appears to be the challenger's commercialization of the invention outside the one-year grace period. *Id.*

Defendant argues that the Hughes proposals and the research and development contracts Hughes entered into with the Navy constitute sales or offers within the meaning of section 102(b).[13] Defendant contends that Hughes intended to sell the Noland gun at the time of the proposals and contracts, and that the device was disclosed to the purchaser and the public. In addition, the government asserts that the public policy against removing inventions from the public domain supports a finding that the Noland gun was on sale more than one year prior to plaintiff's patent application. Finally, defendant asserts that Hughes' failure to cite the research and development contracts on its patent application is not determinative of whether the Noland gun was on sale under the statute. Therefore, the government maintains, it cannot be equitably estopped from arguing that Hughes' invention was in fact on sale one year prior to Siemens' patent application.

Siemens asserts that defendant cannot make a *prima facie* case that the Noland gun was on sale under 102(b). Plaintiff argues that the Hughes proposals did not specifically contemplate the sale of the Noland gun. Siemens also contends that the research and development contracts only concerned the sale of engineering services and not manufactured products. Moreover, plaintiff argues that even if the research and development contracts sold the Noland gun, the sales were confidential and therefore do not implicate the policies underlying the on-sale bar.

In considering whether to apply the on-sale bar, the court must look to the four policies underlying section 102(b):

(1) A policy against removing inventions from the public which the public has justifiably come to believe are freely available to all as a consequence of prolonged sales activity.

(2) A policy favoring prompt and widespread disclosure of new inventions to the public. The inventor is forced to file promptly or risk possible forfeiture of his patent rights due to prior sales.

(3) A policy to prevent the inventor from commercially exploiting the exclusivity of his invention beyond the statutorily authorized 17 year period.

(4) A policy to give the inventor a reasonable amount of time following sales activity (set by statute as one year) to determine whether a patent is a worthwhile investment. This benefits the public because it tends to minimize the filing of inventions of only marginal public interest.

*UMC*, 816 F.2d at 652 (citing *General Electric Co. v. United States*, 228 Ct.Cl. 192, 654 F.2d 55, 61 (1981)).

In cases such as this one, where a party other than the inventor or patent holder allegedly sells the invention, the third and

---

are entitled is February 12, 1973, its U.S. filing date.

**12.** "Anticipation" and "obviousness" are terms of art in patent law. A prior invention anticipates the invention sought to be patented where the two are identical. R. HARMON, PATENTS AND THE FEDERAL CIRCUIT 43. A prior in-

vention will also invalidate a patent on an invention sufficiently similar to be obvious to a person of ordinary skill in the art.

**13.** Hughes made the alleged an offer for sale under Navy '0205 Contract in February, 1971, and the alleged offer for sale under Navy '0198 Contract in December, 1971.

fourth policies supporting the on-sale bar are inapplicable. However, a sale by an unrelated third-party, like Hughes, may still invalidate the Hechtel patent.

> Where the sale is by one other than the inventor ... it would seem that the policy against extended commercial exploitation and the policy favoring the filing of only worthwhile inventions could be said not to apply. Nevertheless, it is well established that a placing of the invention "on sale" by an unrelated third party more than 1 year prior to the filing of an application for patent by another has the effect under § 102(b) of invalidating a patent directed to that invention. [Citations omitted]. Accordingly, Congress should be held to have concluded, at the least, that the policy against removing inventions from the public domain and the policy favoring early patent filing are of sufficient importance in and of themselves to invalidate a patent where the invention is sold by one other than the inventor or one under his control.

*General Electric Co.*, 654 F.2d at 61–62 (footnote omitted). Accordingly, the court must determine whether the parties' arguments in the instant case can be reconciled with the section 102(b) policies applicable to third party sales.

### A. The Development Proposals

■ Defendant first argues that Hughes' various development proposals are offers for sale under section 102(b). The government is entirely correct that an unconsummated offer to sell an invention is sufficient to invoke the on-sale bar. "An *offer* to sell a later-claimed invention may be sufficient to invoke the bar whether the offer is accepted or rejected." *UMC*, 816 F.2d at 653 (citations omitted) (emphasis in the original). However, the government must still show that the proposals offered the Noland gun for sale. Plaintiff cites the deposition testimony of Messrs. Noland and Forbess in support of its contention that the Noland gun was not for sale at the time of the Hughes proposals.

Mr. Forbess, one of the inventors of the Noland gun, testified that the proposals did not specifically mention the Noland gun:

> Q  Now do you consider the proposals ... as proposals to develop some type of structure?
>
> A  The proposals refer to a tube, a TWT, meaning a particular specification.
>
> Q  And do they identify with any degree of specificity the structure that will be actually used to meet those requirements?
>
> A  No.[14]

Mr. Noland also testified that "the specific gun to the application was not developed" in the proposals.[15]

■ Despite the inventors' deposition testimony, defendant argues that the Noland gun was disclosed to the Navy in the Hughes proposals for the Navy contracts. As a general rule, where the inventor or patentee is the seller, the potential purchaser need not be cognizant of the invention. *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 860 (Fed.Cir. 1985). However, an invention must be disclosed to the purchaser in a third party sale in order to trigger the public use provision of section 102(b). *In re Caveney*, 761 F.2d 671, 675, n. 5 (Fed.Cir.1985); *Wycoff v. Motorola, Inc.*, 502 F.Supp. 77, 209 USPQ 115 (N.D.Ill.1980), *aff'd without op.*, 688 F.2d 843 (7th Cir.1982) (secret third-party sale to the government is not an on-sale bar); *Technitrol Inc. v. Aladdin Industries, Inc.* 316 F.Supp. 639 (N.D.Ill.1970) (secret third-party sales which do not disclose the invention are not on-sale bar activities). The government's bald assertion that the Noland gun was disclosed in the Hughes proposals simply cannot be squared with the deposition testimony of the inventors of the Noland gun, who would be in the best position to determine whether their device was described and disclosed in the proposals and contracts for its development.

Moreover, neither the policy against removing the invention from the public nor the policy favoring prompt disclosure of

---

**14.** Dep. R. Forbess at 69.

**15.** Dep. J. Noland at 59.

inventions to the public by prompt filing of patent applications are implicated by these proposals. The public must believe that the invention was freely available as a result of prolonged sales activity. *UMC*, 816 F.2d at 652. As discussed above, these proposals were not publicly disclosed, so there was no reason for the public to believe that the Noland gun was available. Consequently, the Hughes proposals cannot serve as a basis for invalidating Claim 1 of the Hechtel patent under section 102(b).

### B. The Research and Development Contracts

■ Defendant argues that the Noland invention was on-sale for the purposes of section 102(b), when Hughes and the Navy entered the '0205 contract on January 15, 1972. In support thereof, the government cites the contract language itself and a post-litigation affidavit signed by Mr. Noland. Line item 0001AA of the '0205 contract provides that "[t]he Contractor shall design, develop, and deliver two (2) multimode traveling wave tubes." In his affidavit, Mr. Noland states that the Noland gun is described in the proposals for the '0205 and '0198 Navy contracts. Siemens argues that the on-sale bar is not triggered because the contract was for the sale of engineering services and not a manufactured product (e.g. the Noland gun).

The government relies upon *RCA Corp. v. Data General Corp.*, 887 F.2d 1056, 1061–63 (Fed.Cir.1989), for the proposition that a contract for research and development may put on sale a component of the device to be developed if that component had already been reduced to practice. In that case, RCA had contracted to develop an "RGTV" system which included the "Cole" invention, which had already been reduced to practice prior to RCA's contract. The Federal Circuit held that, under these circumstances, the invention had been placed on sale by virtue of RCA's research and development contract. The government contends that *RCA* is dispositive of the instant case, as the Noland gun was reduced to practice prior to the '0205 con-

tract and was part of the traveling wave tubes offered therein.

Assuming that the Noland gun was described and included in the traveling wave tubes offered for sale in the '0205 Navy contract, defendant has still failed to show that the device was on-sale under section 102(b). *RCA* concerned a prior sale by RCA of its own invention in connection with a non-secret contract. Thus, RCA made its own invention publicly known prior to the one year grace period. The instant case involves a secret sale which did not make the Noland gun publicly available more than one year prior to plaintiff's patent application. At the risk of repetition, the court points out that the proposals and the contract were classified as "SECRET" and were never publicly disclosed. The court finds that the on-sale bar policy against removing inventions from the public is not implicated, as the public could not have believed the Noland gun was available as a result of prolonged sales activity where the sale was confidential. Therefore, the research and development contracts do not constitute invalidating sales activity under section 102(b).

### C. The Affidavits of the Noland Gun Inventors

■ As a final matter, the parties dispute the significance of Hughes' statement on its patent application that the Noland gun invention had not been sold prior to their filing. Siemens argues that the standard of inequitable conduct at the time of the Hughes patent application required Hughes to disclose all sales or offers for sale of the Noland gun. *Fox Industries, Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801, 803 (Fed.Cir.1990). Therefore, plaintiff argues, Hughes' failure to identify the proposals and development contracts as sales indicates that the on-sale bar is inapplicable to those activities. Defendant argues that this statement reflected the applicable caselaw defining sales at the time of Hughes' patent application. Until *RCA* was decided in 1989, no case had ever found a research and development contract to constitute a sale for purposes of section 102(b). Therefore, de-

fendant contends, the inventors were correct in believing at the time that the Noland gun had not been sold prior to the patent application.

In support of its argument, defendant has provided affidavits signed by Messrs. Noland and Forbess in which the inventors state that "[o]n and before September 2, 1975 (the issue date of U.S. Patent 3,903,-450), I did not know or suspect that proposing to use the dual mode electron gun ... in a services contract for research and development on a travelling wave tube would put that gun "on sale." [16] Since plaintiff does not contend that the inventors lied on their patent application, these affidavits are not relevant to the issue of whether the Noland gun was on-sale. As plaintiff's counsel stated its position at oral argument, "there are factual and legal reasons quite apart from inequitable conduct ... that say, this was not a sale...." [17] The court agrees. The inventors' failure to disclose the Hughes proposals and the research and development contracts Hughes entered into with the Navy apparently reflected their understanding of the definition of a sale prior to the *RCA* decision. Therefore, their declaration of no prior sale is not relevant to the issue before the court.

## CONCLUSION

Plaintiff has shown that there is no genuine issue of material fact as to defendant's affirmative defenses under 35 U.S.C. § 102(b) or (g). The activities of Hughes upon which defendant relies to argue invalidation of Claim 1 of the Hechtel patent were suppressed or concealed under section 102(g) and were never made public until after the date of the Hechtel patent application. Moreover, these activities were not sales or offers of sale under section 102(b) and therefore do not constitute a bar to plaintiff's patent. Accordingly, the court grants partial summary judgment in favor of plaintiff as to defendant's section 102(b) and (g) defenses. The effect of the court's decision upon this case will be discussed at

the status conference previously scheduled for September 10, 1992.

IT IS SO ORDERED.

---

**16.** Noland Aff. para. 4.; Forbess Aff. para. 3.  **17.** Transcript at 23.